James COALE and Vida Coale,
Plaintiffs–Respondents,

v.

Paul HILLES and Robbin Hilles, et
al., Defendants–Appellants.

No. 21775.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 29, 1998.

PARRISH, Judge.

Paul J. Hilles and Robbin Hilles, husband and wife, Arluss R. Neace and Tennie M. Neace, husband and wife, and EquiCredit Corporation of Missouri (collectively referred to as appellants) appeal a judgment granting specific performance of an option to purchase real estate. The parties to the option agreement are Mr. and Mrs. Hilles and James R. Coale and Vida Coale. This court affirms.

This being a court-tried case, it is reviewed pursuant to Rule 73.01(c). That review is limited to determining whether there is substantial evidence to support the judgment, whether the judgment is against the weight of the evidence or whether it is the result of an erroneous declaration or application of law. *Nixon v. Greenlee*, 928 S.W.2d 917, 918 (Mo.App.1996). Fact issues on which the trial court did not enter specific findings are considered as being found in accordance with the result reached. *Long v. Zirkle*, 811 S.W.2d 840, 844 (Mo.App.1991); Rule 73.01(a)(2).

Paul Hilles and Robbin Hilles purchased a 9.9–acre tract of land in Texas County, Missouri, from James Coale and Vida Coale in 1993.[1] There was a residence located on the property. Mr. and Mrs. Coale occupied the residence prior to the sale. They were in the process of building a new residence on adjoining property at the time of the sale. The Coales' new residence was being constructed on a two-acre tract that adjoined the 10–acre tract.

The sale from the Coales to the Hilleses included an agreement granting Mr. and Mrs. Coale an option to repurchase two acres that were part of the 10–acre tract. The two acres adjoins the land on which Mr. and Mrs. Coale built their new residence. The option agreement was recorded in the Texas County, Missouri, real estate records.

The option agreement states that Mr. and Mrs. Hilles "grant and convey to James R. Coale and Vida Coale, husband and wife, the first option to purchase" the two-acre tract. It provides:

Craig F. Lowther, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for Defendants–Appellants.

William E. Gladden, Houston, for Plaintiffs–Respondents.

---

1. Mr. Coale testified that the parties to the transaction considered the parcel to be 10 acres. It is referred to in this opinion as "the 10–acre tract."

This option is perpetual and will continue in force until such time that the 10 acres owned by Paul J. Hilles and Robbin Hilles and described in warranty deed recorded in Book *513,* Page *280,* Texas County records (on which the 2 acre option is located), or the adjoining 2 acres owned by James Coale and Vida Coale, is sold or otherwise transferred. The option is automatically and irrevocable [sic] transferred with the property sale, regardless of which property is sold. However, this option shall automatically terminate if not exercised within 90 days from date of closing.

James Coale and Vida Coale, their successors or assigns may purchase the above described property for fair market value determined by an independent appraisal.

The warranty deed recorded in Book 513, Page 280, Texas County records, is the deed by which Mr. and Mrs. Coale conveyed the 10–acre tract to Mr. and Mrs. Hilles.

On May 31, 1996, Mr. and Mrs. Hilles conveyed the 10–acre tract to Arluss R. Neace and Tennie M. Neace, husband and wife. Mr. and Mrs. Neace executed a deed of trust to the premises to secure a loan they obtained from EquiCredit Corporation of Missouri.

On October 4, 1996, Mr. and Mrs. Coale filed the action that is the subject of this appeal in the Circuit Court of Texas County. They sought specific performance of the option agreement.

The trial court entered judgment in favor of Mr. and Mrs. Coale. It found:

that Plaintiffs [Mr. and Mrs. Coale] and Defendants Hilles were parties to a conveyance of real property and entered into a written agreement, a document denominated "First Option to Purchase" admitted in evidence as Exhibit 1; that Plaintiffs' right to specific performance lies in the enforceability of said "option"; that there was consideration for said option being granted; that the terms of the option, inartfully drafted by a non-attorney at the request and instruction of Plaintiffs, are ambiguous; that upon review of the testimony as to the circumstances surrounding its execution and the statements and actions of the parties to said option, the Court finds that the language therein limiting its exercise "within ninety days from date of closing" means within ninety days from the date of closing of the sale of either Plaintiffs' property or Defendants Hilles' property, .... That Defendants Hilles thereafter sold the real property (upon which Plaintiffs held the option to purchase) to Defendants Neace; that Defendants Hilles had acknowledged the existence of the option favoring Plaintiffs in 1996, more than two years after it (the option) was executed by the Plaintiffs and Defendants Hilles; that Defendants Neace were made aware of the existence of the option to purchase in favor of Plaintiffs prior to their (Defendants Neace) purchase of the property; that Plaintiffs tendered the sum of $2,000.00 upon exercise of the option and appraisal of the property; that any resulting hardship to be suffered by the specific performance of Defendants Hilles either upon said Defendants or Defendants Neace results from their actions in proceeding with the sale of said property after being advised of the outstanding interest of Plaintiffs; that Defendants Hilles and Neace reliance upon the advice of others as to the legitimacy of the option or Plaintiffs' rights thereunder is no excuse and does not justify their reliance thereon or make enforcement of the option inequitable.

The trial court entered judgment directing Mr. and Mrs. Hilles to specifically perform the option agreement by conveying the real estate that is the subject of the agreement to Mr. and Mrs. Coale. Mr. and Mrs. Coale were directed to pay the sum of $2,000 that was in escrow to Mr. and Mrs. Hilles upon the property being conveyed to the Coales. The judgment further provides, "Defendants Neace and Defendant Equicredit Corporation of Missouri are divested of any interest in said property upon the delivery of the aforesaid deed from Defendants Hilles to Plaintiffs Coale."

Appellants raise two points on appeal.[2] They contend in Point II that the trial court

---

2. A third point (Point I in appellants' brief) was withdrawn at oral argument in this case.

erred in holding "that the option did not terminate ninety days after the closing of the real estate transaction on September 15, 1993 [the date of the closing of the Coales' sale of the 10–acre tract to the Hilles]." They contend in Point III that the trial court erred in holding that the option agreement was entitled to specific performance.

■ This opinion first addresses Point III. Point III states:

The trial court erred in ordering specific performance of the option agreement because respondents were not entitled to specific performance under Missouri law in that:

A. Specific performance is not justified if the agreement is ambiguous;

B. The option price was grossly inadequate;

C. A decree of specific performance will cause substantial hardship and injustice to the appellants; and

D. There was no showing that the Coales could not be adequately compensated by an award of monetary damages.

■ Rule 84.04 specifies the manner in which trial court error must be alleged. If its requirements for stating points relied on are not met, nothing is presented for appellate review. *Jones v. Jones*, 937 S.W.2d 352, 357 (Mo.App.1996).

As explained in *Bentlage v. Springgate*, 793 S.W.2d 228, 229 (Mo.App.1990), the rule requires that points relied on contain three things: "(1) a statement of the action or ruling of the trial court about which the party complains; (2) a statement that specifies why the ruling was erroneous; and (3) a statement informing the appellate court wherein the evidence at trial supports the position the party asserts the trial court should have taken." Stating only abstract statements of law without showing how they are related to any action or ruling of the trial court does not comply with the rule. *Id. See* Rule 84.04(d).

*Id.*

Appellants follow the claim of error in Point III with four assertions, statements A through D, that state "why" the Coales were not entitled to specific performance. However-

er, as to statements A, B and C, the assertions do not disclose "wherein" the record on appeal supports the claim that specific performance was not warranted. Statement A does not identify what about the agreement is ambiguous. Statement B does not disclose what evidence supports the claim that the option price was "grossly inadequate." Statement C does not state what evidence demonstrated specific performance would be a hardship on appellants. Statement D does not reveal any evidence that demonstrates respondents could have been adequately compensated by money damages; however, since the allegation that Mr. and Mrs. Coale had no adequate remedy of law is in their petition, arguably statement D is sufficient to raise the question of whether Mr. and Mrs. Coale were required to present specific evidence on whether they could have been adequately compensated by monetary damages.

Other than the claim in statement D, Point III does not comply with the requirement of Rule 84.04(d) that allegations of error state wherein the record on appeal discloses the trial court erred. *See Branson Hills Associates, L.P. v. Millington*, 907 S.W.2d 231, 233 (Mo.App.1995). "This court may, nevertheless, look to the argument portion of the brief to determine if there was plain error affecting substantial rights which, though not preserved, resulted in manifest injustice or miscarriage of justice. Rule 84.13(c); *Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App. 1988)." *Id.* The argument in support of statements A through C of Point III will be reviewed for plain error.

In an effort to find trial court error, appellants point to the statement in the trial court's findings that says the option agreement is ambiguous. They contend specific performance could not be granted for that reason.

■ "[A] contract to be specifically enforceable must be complete in its essential and material terms, and capable of being enforced without adding to its terms." *Ray v. Wooster*, 270 S.W.2d 743, 751 (Mo.1954). To justify specific performance a contract must not be indefinite, uncertain or incomplete. *Assemblies of God v. Hendricks*, 807

S.W.2d 141, 146 (Mo.App.1991). However, if an instrument contains essential elements necessary for its enforcement as a contract, it is not incomplete or indefinite because other nonessential provisions could have been included but were not. *Ray v. Wooster, supra* at 751–52. The fact that some matters that are not elements essential to a contract are not decipherable with certainty from its language does not preclude the contract's enforcement. *Id.* at 752.

In *Community Land Corp. v. Stuenkel,* 436 S.W.2d 11 (Mo.1968), the court explained:

We first recognize the general rule "that a court of equity will not make a contract for the parties, and if a contract is indefinite, uncertain or incomplete the court will not order specific performance." *Wilkinson v. Vaughn,* Mo.Sup., 419 S.W.2d 1, 5 [1967]; Pomeroy, Specific Performance of Contracts, 3rd Ed., § 159. However, parol evidence "may always be resorted to for the purpose of explaining the position of the parties and of the subject-matter and other surrounding circumstances at the time of concluding the contract, so that the court may be put into the position of the parties, may see with their eyes, and may understand the force and application of the language employed by them." Pomeroy, Specific Performance of Contracts, 3rd Ed., § 161, pp. 412–413; *Herzog v. Ross,* 355 Mo. 406, 196 S.W.2d 268 [banc 1946]; 167 A.L.R. 407.

*Id.* at 15–16.

The option agreement stated it would continue "until such time that the 10 acres owned by Paul J. Hilles and Robbin Hilles ... or the adjoining 2 acres owned by James Coale and Vida Coale, is sold or otherwise transferred." It provided that the option "is ... transferred with the property sale, regardless of which property is sold." It concludes, "However, this option shall automatically terminate if not exercised within 90 days from date of closing." It is the last of these statements that breeds the controversy addressed in this appeal.

The trial court considered all clauses in the option agreement and determined its meaning was consistent with the testimony of Mr. and Mrs. Coale; that the option agreement could be exercised within 90 days of the closing of a sale by Mr. and Mrs. Hilles of the 10–acre tract they had purchased from the Coales or within 90 days after the closing of the sale of Mr. and Mrs. Coales' two acres that adjoined the 10–acre tract.

The parties to the agreement disagreed over its meaning. That disagreement does not require a determination that the option agreement was not sufficiently certain and definite to be specifically enforced. *See Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806, 816 (Mo.App.1992).

In order to ascertain whether an agreement is sufficiently definite and certain to be enforced, the whole instrument is considered and its words given their natural and ordinary meaning. *Id.* Extrinsic or parol evidence can be used to explain the positions of the parties at the time the agreement was made so the court may better understand the force and application of the language employed. *Community Land Corp. v. Stuenkel,* 436 S.W.2d at 15–16. Extrinsic and parol evidence cannot, however, be used to create an ambiguity. *Jake C. Byers, Inc.,* 834 S.W.2d at 816. The option agreement was not rendered indefinite and uncertain by its failure to declare with greater specificity that the word "closing" referred only to the two potential transactions identified therein. *See Ray v. Wooster,* 270 S.W.2d at 752. The trial court's characterization of the option agreement as "ambiguous" overstated what amounted to a disagreement over its meaning.

Two potential real estate transfers are addressed by the language of the option agreement: a sale or other transfer of the 10–acre tract by Mr. and Mrs. Hilles, and a sale or transfer of the adjoining two acres by Mr. and Mrs. Coale. The language does not address the earlier sale of the 10–acre tract. The language of the option agreement, read in its entirety, supports the trial court's construction. That construction is supported by substantial evidence. It is not against the weight of the evidence. *See Herzog v. Ross,* 355 Mo. 406, 196 S.W.2d 268, 270 (banc 1946).

■ The next assertion under Point III is that "the option price was grossly inadequate." The option agreement provides, "James Coale and Vida Coale, their successors or assigns may purchase the above described property for fair market value determined by an independent appraisal."

In June 1996 the Hilleses and their prospective purchasers, the Neaces, were notified, in writing, that Mr. and Mrs. Coale were exercising their option to repurchase the two acres. The notification stated:

We intend to obtain an independent appraisal of this real estate to determine the fair market value and if you are interested in joining with us in selecting an appraiser, then please notify us within the next ten days. If we do not hear from you concerning the selection of an independent appraiser, then we will proceed to obtain an independent appraiser and have a fair market value to the said real estate determined by the independent appraiser at which time we will place into escrow the fair market value price as determined by the appraiser and do any other things therein required by us to be done in order to complete the purchase of the ... real estate.

Mr. Coale looked in the Yellow Pages where he found the name of two appraisers. Shirley Smith was one of the appraisers. Mr. Coale explained, "[A]fter I saw her name in the Yellow Pages, I consulted with my attorney and asked if that would be all right to use that person, and my attorney advised me that it would." He contacted Shirley Smith and requested her to appraise the property. She did so.

The appraised value of the two acres was $2,000. An escrow account for deposit of the purchase price was established at First Home Savings Bank of Mountain Grove. Mr. and Mrs. Coale deposited $2,000 in the account. Mr. and Mrs. Coales' attorney prepared a notice of the appraisal and escrow account. It was delivered to defendants.

Shirley Smith testified at trial. She stated she was a state certified real estate appraiser. She told the court she appraised the two-acre tract at the request of Mr. and Mrs. Coale. She used the market data approach in establishing its value. She valued the property at $2,000 based on sale prices of three comparable properties.

■ The only evidence defendants presented concerning the value of the two acres was the testimony of Robbin Hilles and Arluss Neace. Mrs. Hilles gave the opinion that the two acres were worth "at least $10,000." Mr. Neace testified that the two acres were worth more than $2,000 to him.

[I]nequality in value between the subject matter and the price, standing alone, does not rise to the level of unconscionability which requires the refusal of specific performance. *Miller v. Coffeen*, 365 Mo. 204, 280 S.W.2d 100, 103 (banc 1955). Adequacy of consideration is but a factor to be considered in the light of all the circumstances and unless accompanied by other inequitable incidents or unless the disparity is so gross as to show fraud, it will not mandate the denial of specific performance. *Id.*

*Seabaugh v. Sailer*, 679 S.W.2d 924, 927 (Mo. App.1984). There was no evidence of fraud. Giving due deference to the trial court's responsibility to weigh evidence and assess credibility of witnesses, *see Brown v. Van Noy*, 879 S.W.2d 667, 671 (Mo.App.1994), the disparity between the estimated values of the land was not shown to be so gross that it constituted fraud.

■ Appellants' third assertion under Point III is that specific performance would result in appellants experiencing substantial hardship and injustice. The trial court concluded that any hardship suffered by the Hilleses or the Neaces resulted from their proceeding with the sale after they were advised of the Coales' outstanding interest in the property. It concluded that their reliance on advice of others concerning the legitimacy of the option and of Mr. and Mrs. Coales' rights was no excuse and did not make enforcement of the option agreement inequitable.

Mr. and Mrs. Coale informed the Hilleses' buyers, Mr. and Mrs. Neace, of the option before the closing date of their transaction. Mr. and Mrs. Coale also faxed a request to the title company that was handling the sale

requesting it to advise the parties to the sale that Mr. and Mrs. Coale intended to exercise the option to purchase the two acres. The trial court's finding that the hardship the Neaces and EquiCredit Corporation of Missouri experienced resulted from their actions in proceeding with the sale after being advised of the outstanding interests of Mr. and Mrs. Coale is supported by substantial evidence and is not against the weight of the evidence. *See Starchman v. Bill Stoffle Ford, Inc.,* 610 S.W.2d 294, 295–96 (Mo.App. 1980). *See also Beaufort Transfer Co. v. Fischer Trucking Co.,* 451 S.W.2d 40, 45 (Mo.1970); *Dean Operations, Inc. v. Pink Hill Associates,* 678 S.W.2d 897, 900–01 (Mo. App.1984).

■ The final statement under Point III directed at the allegation that the trial court erred in granting specific performance is, "There was no showing that the Coales could not be adequately compensated by an award of monetary damages." "This contention overlooks the fact that a tract of land is regarded as unique, entitling purchaser to specific performance of a contract for its purchase, irrespective of special facts showing inadequacy of purchaser's legal remedy." *Wilkinson v. Vaughn,* 419 S.W.2d 1, 5 (Mo. 1967).

There is no plain error with respect to statements A through C. The claim in statement D is denied. Point III is denied.

■ Point II alleges the trial court erred in not concluding that the option agreement expired 90 days after the September 15, 1993, closing of the real estate transaction in which Mr. and Mrs. Hilles acquired the 10–acre tract from Mr. and Mrs. Coale. Appellants contend the evidence disclosed the parties intended the option to extend for only 90 days following September 15, 1993. They argue this is "[t]he most probable and only reasonable construction." They contend the agreement was drafted by Mr. and Mrs. Coale and should be construed adverse to the Coales; that rules of construction required the determination that the 90–day limitation

on exercising the option began running September 15, 1993.

The trial court heard testimony concerning the intent of the parties and weighed the evidence.

In construing the testimony of witnesses, this court defers to the trial court's assessment of credibility. Rule 73.01(c)(2). Having had the opportunity to observe the witnesses, the trial judge, sitting as the trier of fact, was entitled to believe all, part or none of the testimony of any witness. *Estate of Johnson v. Lamburth,* 719 S.W.2d 55, 59 (Mo.App.1986). On appeal, in considering the sufficiency of the evidence, this court accepts as true the evidence and permissible inferences favorable to the judgment and disregards contradictory evidence. *Morgan v. Morgan,* 701 S.W.2d 177, 179 (Mo.App.1985).

*Luna v. Smith,* 861 S.W.2d 775, 780 (Mo.App. 1993).

The trial court has responsibility of weighing the evidence and resolving facts. *Brown v. Van Noy,* 879 S.W.2d at 671. This court, on appeal, determines whether the record supports the trial court's determination. *Id.* The evidence supports the trial court's conclusion that the parties intended the option to extend to such time as either the Hilleses transferred the property they acquired from the Coales or the Coales transferred their two acres that adjoined the 10–acre tract. That construction is reasonable in light of the language of the agreement and the evidence adduced.

■ *Graham v. Goodman,* 850 S.W.2d 351 (Mo. banc 1993), answers appellants' claim that construction of the language concerning when the option terminated should be adverse to Mr. and Mrs. Coale because they drafted the provision.[3] "This canon [of construction], however, is employed only as a last resort when there is no evidence showing the parties' intent." *Id.* at 356. It is not applicable to the facts in this case.

■ Appellants' final assertion in Point II is that the sentence that says the option

---

3. The Coales faxed a mutually agreed upon statement that set forth the terms of the option agreement to Texas County Title Co. The title company

included the language in the agreement it prepared pursuant to the instructions of the parties to the sale.

terminates in 90 days should be read as "modifying" the agreement's first sentence concerning the duration of the option agreement. In ascertaining an instrument's meaning, it is construed as a whole. *Butler v. Centerre Trust Co.*, 656 S.W.2d 831, 834 (Mo. App.1983). The trial court's interpretation of the option agreement is based on a natural, ordinary and common sense meaning of the language of the entire agreement. Point II is denied. The judgment is affirmed.

PREWITT, P.J., and CROW, J., concur.