**COWBELL, LLC, Respondent,**

v.

**BORC BUILDING AND LEASING CORP. and Knight Construction Company, Appellants.**

**Nos. WD 72052, WD 72231.**

Missouri Court of Appeals, Western District.

Nov. 9, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 2010.

Application for Transfer Denied Jan. 25, 2011.

James B. Jackson, Independence, MO, for Appellants.

Hugh L. Marshall, Kansas City, MO, for Respondent.

Before: THOMAS H. NEWTON, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

THOMAS H. NEWTON, Presiding Judge.

BORC Building and Leasing Corporation ("BORC") and Knight Construction Company ("Knight") (referred to collectively herein as "the Corporations") appeal the trial court's judgment ordering specific performance of a land sale and awarding Cowbell, LLC ("Cowbell"), the buyer, attorney fees. The Corporations contend that they had no authority to sell the land, that the signatures executing the contracts were invalid, that the sale was unconscionable, and that it was unconscionable to award Cowbell attorney fees. We affirm the judgment of the trial court, grant Cowbell's motion for attorney fees on appeal, and remand to the trial court for hearing and judgment entered accordingly.

## Factual and Procedural Background

The Corporations owned three contiguous parcels of undeveloped land in Independence, Missouri, totaling approximately twelve acres. The properties were acquired between 1974 and 1983 for a total purchase price of $199,000.

In February 2007, an Auction Contract and a Sales Contract were executed between owners of interests in the Corporations and the Land Source as the listing broker.[1] The Auction Contract provided

---

1. The Corporate ownership interests at the time of the contract's signing were shown by stipulated facts as follows:
BORC:

- Mr. Billie Collins owned twenty-five percent.
- Mr. Ralph Cortner owned twenty-five percent on the corporate certificates and

that the Corporations were the sellers and for the land to be sold "as is." The form also provided an option for the sale of the property to be "with reserve," for an additional fee. The sellers did not choose this option; it was hand marked as "N/A." Instead, the contract provided for the property to be sold "absolute, without reserve." A Sales Contract was also signed in conjunction with the Auction Contract by the same parties, as well as by two additional owners of interests in the Corporations.[2]

In March 2007, the three tracts of land were auctioned without reserve. According to the testimony of Cowbell's managing partner, Mr. David Block, the auction was heavily advertised for six months preceding the auction. Cowbell bid $27,500, plus a premium of $2,750 for the listing broker, for a total of $30,250. This was the highest bid. Cowbell wired the money to the title company, but the owners of interests in the Corporations refused to execute a deed to convey the land or to accept payment. Cowbell sued for breach of contract and sought specific performance of the sale. The Corporations raised as affirmative defenses, *inter alia*, lack of capacity to contract and unconscionability.

At the bench trial in September 2008, an appraiser testified for the Corporations that the property's market value was $785,000. However, in 2006, the county listed the value of the land at $115,503.[3] It was also adduced that the Corporations had attempted to sell the land several times and the only offer they received was for $100,000.

The trial court found that all persons who had an interest in the proceeds of the sale or had a right to control the business of the Corporations participated in preparing and signing the Auction and Sales Contracts. Consequently, it found the Corporations bound by the contracts. It further found that "[u]nconscionability based on

---

books. He died prior to 2007, and his interest passed to Loretta Cortner through probate.
- Mr. Oscar Knight owned fifty percent on the corporate certificates and books. He died prior to 2007, passing his interest to Esther Knight through probate, who also died prior to 2007, passing the interest to Ms. Pamela Haggard and Ms. Lora Houston through probate.

Knight:
- Mr. Robert Hogge owned one-seventh.
- Mr. Billie Collins owned one-seventh.
- Mr. David Rogers owned one-seventh.
- Mr. Ralph Cortner owned one-seventh on the corporate certificates and books. He died prior to 2007, and his interest passed to Loretta Cortner through probate.
- Ms. Esther Knight owned one-seventh. She died prior to 2007, passing the interest to Ms. Pamela Haggard and Ms. Lora Houston.

The trial court further found with respect to Knight that:
- Mr. John O'Shields died owning one-seventh. His son was Mr. John O'Shields.

(For ease of reference, "John O'Shields, Jr.").
- Mr. Gene Jury died owning one-seventh. His sons were Mr. Michael Jury and Mr. Mitchell Jury.

No evidence was offered to dispute that Mr. O'Shields, Jr. or Mr. Michael or Mitchell Jury inherited their fathers' ownership interests.

2. The Auction Contract was signed by Mr. Robert Hogge, Mr. David Rogers, Mr. Billie Collins, Mr. Michael Jury, Ms. Loretta Cortner, Ms. Pamela Haggard, and Mr. John O'Shields. The Sales Contract was additionally signed by Ms. Lora Houston and Mitchell Jury.

3. The tax assessments were offered by Cowbell and objected to by the Corporations for any use to evidence the land's value. The trial court overruled the objection, stated it would give the assessments their appropriate weight, and later sustained an objection to a question by Cowbell that characterized the assessments as showing the value of the property.

inadequacy of price is not an available defense to a voluntary no-reserve auction." It then ordered specific performance of the land conveyance, decreed the Corporations divested of title, and assessed costs against the Corporations. After trial, Cowbell sought $53,515.81 for its attorney fees and expenses. The trial court entered judgment awarding Cowbell $30,000 of its fees and expenses, payable from the purchase monies Cowbell had placed in escrow. The Corporations appeal, raising four points.

### Standard of Review

We review the judgment of a bench-tried case under the standard pronounced in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We determine "whether the judgment is not supported by the evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Jackson v. O'Dell*, 851 S.W.2d 535, 536 (Mo.App. W.D.1993). We view the evidence and inferences to be draw from it in the light most favorable to the judgment, disregarding contrary evidence and inferences. *Landers v. Sgouros*, 224 S.W.3d 651, 655 (Mo.App. S.D.2007).

### Legal Analysis

■ In their first and second points on appeal, the Corporations argue that the trial court erred in ordering specific performance because the contracts were not validly executed. The Corporations argue the trial court erred in finding the contracts enforceable because their execution did not comply with section 351.400,[4] which governs the procedure for the disposition of all of a corporation's assets. They further contend the contracts' execution was invalid because there were insufficient shareholders of record or directors to make up a quorum, no resolutions had

been adopted authorizing the sale, the articles did not authorize the sale, no officer or director had inherent authority to sell the land, and the signatories signed in their own names. We do not agree.

■ First, the purpose of section 351.400 is to protect the stockholders of the corporation. *Beaufort Transfer Co. v. Fischer Trucking Co.*, 451 S.W.2d 40, 43 (Mo. banc 1970). It does not implicate public policy and a sale not in compliance with its procedures is not "of necessity, unlawful or void." *Id.* Consequently, where all owners of shares in the corporation have signed an agreement to dispose of the corporations assets, noncompliance with the formalities will not invalidate the agreement. *See id.* at 43–44. In *Beaufort*, the signatory owned all the shares in a corporation and executed a sales contract. *Id.* The signatory argued that the corporation's Board, composed of his wife and daughter, did not ratify the sale as required by its bylaws. The court, finding the argument neither "new nor novel," rejected this contention because all ownership interests had signed the contract. *Id.* at 43. It relied on an early statement in *Union National Bank v. Shoemaker*, 68 Mo.App. 592 (1897), where three shareholders who collectively owned all the shares in the corporation sought to invalidate a sale: " 'they were in fact the corporation, and whatever all these shareholders did or consented to must be treated as the act of the corporation.' " *Beaufort*, 451 S.W.2d at 43; *see also Wooster Republican Printing Co. v. Channel 17, Inc.*, 533 F.Supp. 601, 618 (W.D.Mo.1981) ("[F]ailure of the corporate seller to comply with all technical requirements ... is not fatal ... as long as the primary purpose of the statute has been achieved."). Here, because each of the holders of interests in

---

4. Statutory references are to RSMo 2000.

the Corporations was represented in the agreements, the purpose of the statute was served.

 Nor do we accept that the Corporations lacked capacity to contract because a quorum of shareholders or directors was allegedly lacking. Although shares had passed from decedents to their heirs, the record books had not been updated to reflect these transfers. The Corporations contend they could not contract because their record shares were in the names of dead persons and their Board members had died with no new elections. A corporation cannot fail to elect directors, fail to update records, and then use its own failure to comply with formalities to defeat the claims of third parties with which it contracted. *See Beaufort,* 451 S.W.2d at 43; *Still v. Travelers Indem. Co.,* 374 S.W.2d 95, 101 (Mo.1963). "The corporation laws are designed to provide investors with protection from personal liability," *Jackson,* 851 S.W.2d at 537, and the laws governing the sale of corporate assets are designed primarily to protect the interests of minority and dissenting shareholders. *Wooster,* 533 F.Supp. at 617. It does not follow that non-compliance with the formalities permits the corporation to subvert a contract with a third party that was agreed to by all owners of interests in the corporation. *See Beaufort,* 451 S.W.2d at 43; *see also Still,* 374 S.W.2d at 99–100 ("The legislature has prescribed a procedure to be followed … it has not declared a transaction which does not follow the prescribed procedure 'unlawful' or 'fraudulent and void.'").

 For the same reasons, we disagree with the Corporations' argument that because the signatories signed in their own names rather than indicating a representative capacity, the contracts were not valid-ly executed. *See Jackson,* 851 S.W.2d at 536 n. 1. The Corporations' first and second points are denied.

In their third point on appeal, the Corporations contend that the trial court erred in finding that unconscionability did not apply to the sale. They rely principally on *Miller v. Coffeen,* a case in which the Missouri Supreme Court reversed an order of specific performance of a home sale where the sale was for "shockingly inadequate consideration" and the contract was "conspicuously harsh, biting, and oppressive." 365 Mo. 204, 280 S.W.2d 100, 105 (1955). They argue that the disparity between their appraiser's testimony of the market value of the property and Cowbell's winning bid at auction shows that to order specific performance of the sale was unjust.[5]

 The doctrine of unconscionability is meant to guard against one-sided contracts, oppression, and unfair surprise. *Landers,* 224 S.W.3d at 664 n. 12. Unconscionability may be procedural, substantive, or a combination of both on a "sliding scale." *Brewer v. Mo. Title Loans, Inc.,* 323 S.W.3d 18, 21–23 (Mo. banc 2010). A contract is found unconscionable where it is so strongly, grossly, and manifestly unequal that someone with common sense would exclaim at the inequality of it. *Landers,* 224 S.W.3d at 664 n. 12. However, "[i]nequality in value between the subject matter and the price, standing alone, does not rise to the level of unconscionability which requires the refusal of specific performance." *Coale v. Hilles,* 976 S.W.2d 61, 67 (Mo.App. S.D.1998) (internal quotation marks and citation omitted). Rather, we determine whether an agreement is unconscionable in view of the circumstances in which the contract was made. *Landers,* 224 S.W.3d at 664 n. 12. Inadequate con-

5. The trial court made no specific finding as to the value of the property.

sideration will not mandate the denial of specific performance " 'unless accompanied by other inequitable incidents or unless the disparity is so gross as to show fraud.' " *Coale*, 976 S.W.2d at 67 (quoting *Seabaugh v. Sailer*, 679 S.W.2d 924 (Mo. App. E.D.1984)). In analysis of the facts, we are guided by "principles of equity, real estate, and contract law." *Landers*, 224 S.W.3d at 663–64.

Here, the Corporations agreed to the sale of the property "without reserve," which is a term of art. *See Wilcher v. McGuire*, 537 S.W.2d 844, 846 (Mo. App.1976). When an auction is made "without reserve," an owner enters into a collateral contract with anyone bidding at the auction, promising that the property will be sold to the winning bidder. *Id.* Once the auctioneer accepts the bid as the seller's agent, the seller may not reject the bid and is bound to complete the sale. *Coleman v. Duncan*, 540 S.W.2d 935, 937–38 (Mo.App.1976). Consequently, just as Cowbell agreed to bear the risk of the "as is" sale, the Corporations agreed to bear the risk of "inadequate" consideration.

The Corporations do not dispute the general law of no reserve auctions. Instead, they argue this is "an exception to the rule because of the circumstances." However, other than their allegation of inadequacy of price,[6] the only allegations of "other inequitable incidents" are the comparison between the real estate experiences of Cowbell's managing partner, Mr. Block, and that of the Corporations' interest holders, and their allegation that the shareholders "did not understand just how risky no-reserve auctions could be."

We do not agree that the circumstances surrounding the contracts' execution support a finding of unconscionability. First, the Corporations had previously attempted to sell the land and refused a prior offer, by which we must infer the Corporations had some idea of the land's value. Second, the evidence does not show an imbalance of contracting power. The Corporations elicited testimony from two owners of interests in the Corporations. Mr. Billie Collins, a retired electrician, testified that he was not given a copy of the contracts to read, though he could have requested one. However, he authorized Mr. Robert Hogge to sign the Auction Contract for him and signed the Sales Contract himself. Ms. Loretta Cortner, whose last job had been as an IRS clerk, testified that she was not shown the Auction Contract, yet signed the signature page. She stated that at that time she did not understand what "reserves" were or what "absolute" meant.[7] She testified she did not recall signing the Sales Contract, though she acknowledged her signature. "The law is well settled that one who signs a contract is presumed to have known its contents and accepted its terms." *Warren Supply Co. v. Lyle's Plumbing, L.L.C.*, 74 S.W.3d 816, 819 (Mo.App. W.D.2002) (internal citation and quotation marks omitted). The signatories' alleged failure to read the contracts is not a defense. *See id.*

Third, the Auction Contract gave the seller an option to auction the land *with* reserve for an additional advertising fee and the Corporations specifically opted out

---

6. The Corporations have not suggested what they believe would have been a fair price for the land "as-is" at an auction "without reserve"; their appraisal was for market value. *See Yokley v. Wian*, 877 S.W.2d 179, 182 (Mo.App. W.D.1994) (stating that to determine fair price at a sheriff's sale it was necessary to discount fair market value for the inherent risks).

7. The Corporations do not argue unilateral mistake.

of this provision. Rather than the Corporations being misled to enter into a shockingly unjust contract, it appears they chose to gamble in an auction that did not meet their hopes and expectations.

Finally, although the Corporations point us to law governing inequities in tax sales and sheriffs' sales, we find the law of forced sales to be inapplicable to the present case, which was a voluntary sale. *See, e.g., Yokley v. Wian,* 877 S.W.2d 179, 182 (Mo.App. W.D.1994) (grossly inadequate amounts paid at forced sales may be evidence of constructive fraud) (internal citation and quotation marks omitted); *Wieser v. Linhardt,* 257 S.W.2d 689, 690 (Mo.1953) (inadequacy of consideration may be of "so gross a nature as to amount in itself to conclusive and decisive evidence of fraud"). In those cases, the courts' clear concern was that the state action involved may have amounted to a confiscation. The Corporations' third point is denied.

■■■■■ In their fourth point, the Corporations argue that it was unconscionable to award Cowbell its attorney fees. We follow the "American Rule," under which litigants generally bear their own attorney fees. *Rosehill Gardens, Inc. v. Luttrell,* 67 S.W.3d 641, 648 (Mo.App. W.D.2002). However, there are several exceptions to the rule, including where the payment of attorney fees is provided for by statute or contract. *See id.*

■■■ In the present case, the Sales Contract provided that:

In the event either party shall institute (or be joined as a party) in any action or proceeding (including arbitration proceedings) due to the performance, non-performance, misperformance, breach, or default under this Contract, then the party who or which substantially prevails in such action or proceeding shall be entitled to recover from the other

party such substantially prevailing party's reasonable attorneys' fees, court cost [sic], and investigative expenses.

Cowbell prevailed at trial and was, therefore, "entitled to recover ... reasonable attorneys' fees" under the terms of the Sales Contract. The Corporations concede that a court may award attorney fees based on the contract but argue this case represents "unusual circumstances" in which an exception should apply. We do not agree. "If a contract provides [for] the payment of attorney[ ] fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party." *Rx Recalls, Inc. v. Devos Ltd.,* 317 S.W.3d 95, 96 (Mo.App. E.D.2010) (internal quotation marks and citation omitted). Contrary to the Corporations' argument, a suit brought for specific performance does not alter that rule. *See, e.g., Vaughn v. Willard,* 37 S.W.3d 413, 417 (Mo.App. S.D.2001) (reversing trial court's denial of contractual attorney fees in suit for specific performance). The Corporations' fourth point is denied.

■■■■ Finally, pursuant to Local Rule XXIX, Cowbell has moved for an award of attorney fees and expenses incurred in this appeal and requested an award of $24,073.94. "With respect to attorney[ ] fees on appeal, a party may be allowed to recover these fees if they are based upon a written agreement that is the subject of the issues that are presented in the appeal." *Rosehill Gardens,* 67 S.W.3d 641, 648 (Mo.App. W.D.2002) (internal quotation marks and citation omitted). In accord with the parties' contract, because Cowbell is the prevailing party on appeal, Cowbell is entitled to its attorney fees for time spent on the issues on appeal. Consequently, the motion for attorney fees is granted. While we have the authority to

award attorney fees on appeal, "we exercise this power with caution." *Id.* Because the trial court is better equipped to determine the "reasonable attorneys' fees, court cost [sic], and investigative expenses" incurred on appeal of the issues on which Cowbell prevailed, we remand to the trial court to hold a hearing and award such amount. *See Rx Recalls, Inc.*, 317 S.W.3d at 97.

### Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. We grant Cowbell's motion for attorney fees and remand the determination of the amount of "reasonable attorneys' fees, court cost [sic], and investigative expenses" incurred on appeal to the trial court for a hearing and judgment entered accordingly.

SMART and ELLIS, JJ. concur.