Craig FEDYNICH, Respondent,

v.

Curtis MASSOOD and Midwest
Outdoor Media, LLC.,
Appellants.

No. WD 72816.

Missouri Court of Appeals,
Western District.

June 21, 2011.

Gregory S. Gerstner, for Appellant.

William J. Foland, Jr., for Respondent.

Before Division Three: JOSEPH M. ELLIS, Presiding Judge, VICTOR C. HOWARD, Judge and THOMAS H. NEWTON, Judge.

VICTOR C. HOWARD, Judge.

Curtis Massood and Midwest Outdoor Media, LLC, (Defendants) appeal the judgment of the trial court in favor of Craig Fedynich on Mr. Fedynich's action for specific performance of a contract. The judgment of the trial court is reversed, and the case is remanded to the trial court with directions.

**Factual and Procedural Background**

In 2002, Curtis Massood and Craig Fedynich formed the business Midwest Outdoor Media, LLC for the purpose of establishing an outdoor advertising sign business. Mr. Fedynich provided the ground leases and permits, and Mr. Massood provided the capital to build the billboards. Billboards were built on thirteen locations in Kansas City. The company also had four other unbuilt locations.

In 2007, the parties attempted to sell Midwest Outdoor Media, but the sale fell through. Mr. Fedynich and Mr. Massood met in September 2007 to discuss dividing the assets of the business. Mr. Fedynich testified at trial that he created a handwritten document at that meeting to attempt to divide those assets. That document was introduced at trial as Exhibit 1 and is attached to this opinion. The top of Exhibit 1 reads "Division of Assets Midwest." Below that are two boxes, one labeled "Curtis Signs" and the other labeled "Craig Signs." In the boxes are numbers and words representing the number of billboards, the highways, and the locations. The four unbuilt locations are listed under the boxes, two under each box. Under the unbuilt locations are Mr. Fedynich's and Mr. Massood's signatures and the date "9–24–07." Finally, under the signatures is the line "Bank Account— Split—Pay Taxes—New Company."

Mr. Fedynich filed suit in December 2008 to enforce the contract. In his claim for specific performance, he alleged that the September 24, 2007 written agreement to divide the assets of Midwest was a valid and enforceable contract. Specifically, Mr. Fedynich sought an order dividing the assets of Midwest in accordance with the contract, naming Mr. Massood as sole shareholder of Midwest, removing Mr. Fedynich's name from any association with Midwest, and prohibiting Mr. Massood from representing that Mr. Fedynich was associated with Midwest.

Mr. Fedynich's testimony was the only testimony at trial. His position was that the September 24, 2007 contract divided all of the assets of Midwest including bank accounts. Defendants asserted that although the parties started the process of dividing the company, they never reached a meeting of the minds on the material terms of such agreement.

Following trial, the trial court entered judgment in favor of Mr. Fedynich finding that there was a written contract entered into between Mr. Fedynich and Mr. Massood to divide the assets of Midwest Outdoor Media, but only the assets above the signature lines. It found that nothing below the signatures was enforceable because it was unclear whether those terms were added contemporaneously with or later than the other terms. It, therefore, found that the evidence was insufficient to establish that the terms below the signatures were part of the contract that was entered into by the parties. This appeal by Defendants followed.

## Standard of Review

 The standard of review for a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *G.H.H. Invs., L.L.C. v. Chesterfield Mgmt. Assocs., L.P.*, 262 S.W.3d 687, 691 (Mo. App. E.D.2008). Thus, the judgment of the trial court will be affirmed unless insufficient evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* The appellate court defers to the factual findings of the trial court, which is in a superior position to assess credibility. *Id.* It will, however, independently evaluate the trial court's conclusions of law. *Id.* Contract interpretation and questions of contract ambiguity are issues of law that will be reviewed *de novo*. *Id.*

## Analysis

 Defendants raise four points on appeal, which are not necessarily addressed in the order presented. In two points, Defendants assert that the trial court erred in disregarding vague and incomplete words at the bottom of the document because it is presumed that all words of a signed document are intended to be part of the document and the evidence was undisputed that the words below the signatures were intended to be part of the contract. In its judgment, the trial court found that nothing below the signatures was enforceable because it was unclear whether those terms were added contemporaneously with or later than the other terms.

Missouri courts recognize that "a presumption exists that alterations and erasures of written instruments, in the absence of evidence to the contrary or suspicious circumstances, were made before or contemporaneously with the execution and delivery of the instrument and it is for the party attacking the instrument to show otherwise." *Otten v. Otten*, 348 Mo. 674, 156 S.W.2d 587, 588 (1941). Such presumption is based on the assumption that people are honest and the fact that "written instruments as first prepared are frequently required to be changed and altered before finally attaining the form which evinces the meeting of the minds of the parties." *Globe Automatic Sprinkler Co. v. Laclede Packing Co.*, 93 S.W.2d 1053, 1057 (Mo.App.1936).

 Nothing in the record indicates that the terms below the signatures were not present at the time Mr. Fedynich and Mr. Massood signed the document.[1] To the contrary, Mr. Fedynich's testimony undisputedly identified the terms as present when he and Mr. Massood signed the agreement. Mr. Fedynich agrees with De-

---

1. "[T]he placement of a signature is not dispositive of the signer's intent. 'While the usual place of signature is at the close of a contract, yet if it appears in the writing at any other place, and was placed there as a signature, it is sufficient.'" *Eiman Bros. Roofing Sys., Inc. v. CNS Int'l Ministries, Inc.*, 158 S.W.3d 920, 922 (Mo.App. W.D.2005) (quoting *McMickle v. Wabash Ry. Co.*, 209 S.W. 611, 612 (Mo.App.1919)).

fendants in this appeal that nothing in the record supports the trial court's conclusion that the terms below the signatures were not present at the time he and Mr. Massood signed the contract. Thus, Mr. Fedynich concurs that the trial court's finding concerning when the terms below the signatures were added was against the weight of the evidence. He contends, however, that despite that deficiency in the judgment, the trial court reached the correct result, and this contention will be addressed below. The trial court erred in determining that terms below the signatures were not part of the contract entered between the parties.

■ Next, Defendants contend that the trial court erred in entering judgment in favor of Mr. Fedynich because the contract was not enforceable in that when all of the terms of the document were considered, including those below the signatures, the document was indefinite and left essential terms for future determination.

■ " 'To establish a submissible case of breach of contract, a plaintiff must first establish the existence of an agreement.' " *Viacom Outdoor, Inc. v. Taouil*, 254 S.W.3d 234, 238 (Mo.App. E.D.2008) (quoting *Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo.App. E.D.1994)). To form a contract, the parties must mutually assent to its terms. *Id.*; *Gateway Exteriors*, 882 S.W.2d at 279. "In other words, 'the parties must have a distinct intention, common to both, and without doubt or difference, and ... the minds of the contracting parties must meet upon and assent to the same thing in the same sense and at the same time.' " *Viacom Outdoor*, 254 S.W.3d at 238 (quoting *Macy v. Day*, 346 S.W.2d 555, 558 (Mo.App.1961)). In determining whether there has been a meeting of the minds, the court can look to the intention of the parties as expressed or manifested in their words or acts. *Building Erection Servs. Co. v. Plastic Sales & Mfg. Co., Inc.*, 163 S.W.3d 472, 477 (Mo.App. W.D.2005).

■ The nature and extent of the contract's essential terms must be certain or capable of certain interpretation. *Id.*; *Smith v. Hammons*, 63 S.W.3d 320, 325 (Mo.App. S.D.2002)(quoting *Gateway Exteriors*, 882 S.W.2d at 279). "In other words, the terms must be 'sufficiently definite to enable the court to give it an exact meaning.' " *Property Assessment Review, Inc. v. Greater Mo. Builders, Inc.*, 260 S.W.3d 841, 846 (Mo.App. E.D.2008) (quoting *Ketcherside v. McLane*, 118 S.W.3d 631, 636 (Mo.App. S.D.2003)). " 'A contract is sufficiently definite if it contains matter which would enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances of the parties and if necessary relevant extrinsic evidence.' " *Id.* (quoting *Maupin v. Hallmark Cards, Inc.*, 894 S.W.2d 688, 695 (Mo.App. W.D. 1995)).

■ No contract is formed where the terms of the agreement are unduly uncertain or indefinite. *Building Erection Servs.*, 163 S.W.3d at 477. "[U]ncertainty and indefiniteness are matters of degree." *Id.* " 'In determining whether a term is too uncertain to be enforced, a court is guided by general principles of law applied with common sense and in the light of experience.' " *Property Assessment Review*, 260 S.W.3d at 846 (quoting *Ketcherside*, 118 S.W.3d at 636). While a contract is not formed if the terms of an asserted agreement are too uncertain, " 'when the parties have written down an agreement in terms to which they both have acceded, the courts are reluctant to hold the agreement ineffectual for indefiniteness.' " *Property Assessment Review*, 260 S.W.3d at 845–46 (quoting *Maupin*, 894 S.W.2d at 695). " 'If

the parties have reserved the essential terms of the contract for future determination, there can be no valid agreement.'" *Smith,* 63 S.W.3d at 325 (quoting *Gateway Exteriors,* 882 S.W.2d at 279). Similarly, "'[n]egotiations or preliminary steps towards a contract do not constitute a contract.'" *Id.* (quoting *Gateway Exteriors,* 882 S.W.2d at 279).

▇▇▇▇▇ The cardinal rule of contract interpretation is to ascertain the intent of the parties and to give effect to that intent. *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. banc 2003). "The terms of the contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning." *Id.* Additionally, each term is construed to avoid rendering other terms meaningless. *Id.* "A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." *Id.*

Defendants assert that when all the terms were considered, including those below the signatures, the agreement was too vague and incomplete to achieve the undisputed intent of both parties to ultimately divide all of Midwest's assets. At trial, Mr. Fedynich testified Exhibit 1 was the complete contract between Mr. Massood and him to divide Midwest's assets. He testified about the billboards and unbuilt locations, the parties' capital contributions to the business, and loans made to the business by Mr. Massood. He also testified that Midwest had ongoing expenses and liabilities such as taxes, lease rental payments, attorney fees, and insurance premiums. Mr. Fedynich stated that a "new company" was part of the agreement and that Midwest would stay intact. Although the division of the billboards and unbuilt locations seems sufficiently definite, the remainder of Exhibit 1 is not. The terms below the signatures, "Bank Account—Split—Pay Taxes—New Company" are unduly uncertain. Questions remain regarding the identity of the bank account and how it would be split. Does the word "split" refer to the bank account, taxes, or both? Additionally, the document does not address the parties' capital contributions, loans made to the company by Mr. Massood, and expenses and liabilities. Nothing is certain about the term "New Company." The evidence did not show a meeting of the minds to divide all of Midwest's assets.

Mr. Fedynich concedes on appeal that the terms below the signature were too uncertain and indefinite to be enforceable.[2] He does not seek to enforce the entire contract or argue that the trial court erred in failing to do so. Instead, he argues, as the trial court found, that the portion of the contract dividing the billboards and unbuilt locations was valid and enforceable and that "this is one of the rare cases where some of the terms have been left without function." Mr. Fedynich essentially asserts that the division of the billboards and unbuilt locations above the signatures constituted a separate, enforceable contract and that "the words below the signatures did not impact the formation of a contract as to the terms above the signatures."

▇▇▇▇▇ Whether a contract is entire or severable depends upon the circumstances of the case and is a question of the parties'

---

**2.** In his brief, Mr. Fedynich states, "Because the intent of the parties as to the terms below the signature block is not plainly manifested by the words alone, and the meaning of those words was still not clear after hearing evidence, the trial court did not err in disregarding those words."

intention, to be determined from the language used and the subject matter of the agreement. *Dippel v. Rokwell Indus., Inc.,* 715 S.W.2d 553, 555 (Mo.App. E.D. 1986). The cases, *HGS Homes, Inc. v. Kelly Residential Group, Inc.,* 948 S.W.2d 251 (Mo.App. E.D.1997), and *Dippel v. Rokwell Indus., Inc.,* 715 S.W.2d 553 (Mo. App. E.D.1986), discuss five criteria that aid in determining whether parties intended that one agreement reached during negotiations be a separate contract. *Smith,* 63 S.W.3d at 326. Mr. Fedynich's position is not, however, aided by these cases. In *HGS Homes* and *Dippel,* the plaintiffs brought actions to recover upon agreements that they pleaded were divisible or separate contracts. 948 S.W.2d at 253, 715 S.W.2d at 555–56. Mr. Fedynich did not. In his pleadings and at trial, Mr. Fedynich sought to enforce the entire contract, which he contended divided all of the assets of the business. He never alleged that the division of just the billboards and unbuilt locations was a separate, enforceable contract. In fact, the trial court specifically asked Mr. Fedynich's counsel at trial whether it was possible that part of the agreement was an enforceable contract while part of it was not. Counsel responded that he believed that the full contract was enforceable. "When one contract is pleaded and another proved it amounts to a total failure of proof as to the contract relied upon and defeats recovery." *Swearingin v. Hartford Fire Ins. Co.,* 570 S.W.2d 810, 812 (Mo.App.1978)(internal quotes and citation omitted). "A party cannot plead one contract and expect the court to enforce another." *Smith,* 63

S.W.3d at 326. Instead, " '[h]e must recover on the contract as alleged, and must show a performance thereof.' " *Id.* (quoting *Cook v. Harrington,* 54 S.W.2d 436, 439 (Mo.App.1932)). Because Mr. Fedynich failed to prove an enforceable contract to divide all of the assets of Midwest, the trial court should have entered judgment in favor of Defendants.[3]

Finally, in their last point on appeal, Defendants claim that the trial court misapplied the law when it denied their motion for summary judgment because there were no issues as to any genuine fact and as a matter of law the handwritten document did not constitute an enforceable agreement. This point need not be addressed based on the disposition of the points above. Additionally, the denial of a motion for summary judgment is not a final judgment and is, therefore, not an appealable order. *Penn–Am. Ins. Co. v. The Bar, Inc.,* 201 S.W.3d 91, 96 (Mo.App. W.D.2006)(internal quotes and citation omitted). The point is denied.

The judgment of the trial court is reversed, and the case is remanded to the trial court with directions to enter a judgment in favor of Defendants.

All concur.

---

**3.** *See e.g. Smith,* 63 S.W.3d at 326 (where appellant/plaintiff failed to plead that portion of agreement was enforceable although agreement on other essential terms was never reached, he could not recover on theory of divisible or severable contract); *Swearingin,* 570 S.W.2d at 812–13 (where respondent/plaintiff only pleaded that a contract existed between he and insurance company, which the evidence did not support, and did not plead theory that he was an insured under his father's policy, the trial court should have sustained insurance company's motion for directed verdict).