**SOUTHWEST PARTS SUPPLY, INC., Plaintiff/Respondent,**

v.

**Alois F. WINTERER, Defendant/Appellant.**

**No. ED 97038.**

Missouri Court of Appeals, Eastern District, Division One.

March 6, 2012.

David T. Streett, St. Louis, MO, for appellant.

Drey A. Cooley, St. Louis, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Appellant Alois F. Winterer (Winterer) appeals the trial court's order enforcing a settlement and subsequent grant of a motion for sanctions. Winterer argues that the trial court improperly granted the motion for sanctions of Respondent Southwest Parts Supply, Inc. (Southwest), because the underlying settlement was never reached. We affirm.

### Background

Southwest owns a parcel of property located at 6400 Plymouth Avenue in St. Louis, Missouri (6400 Plymouth), and co-owns an adjacent parcel, located at 6412 Plymouth Avenue (6412 Plymouth). In 1996, Winterer became a lessee of 6412 Plymouth and used the property to operate his business, Arch Material Handling, Inc. In November 1996, Southwest and Winterer entered an agreement entitled "Purchase Agreement Intent," which provided, among other things, that Winterer would eventually purchase a partial interest in 6400 Plymouth.

In 2009, Southwest filed a petition for partition, and Winterer filed a counterclaim, both asking the trial court to determine the parties' respective interests in the properties. Southwest and Winterer agreed to pursue mediation of the matter. They met with mediator Leonard Frankel for one day in June 2010, and another half day in July 2010. The parties did not reach an agreement, but continued mediation with Frankel through phone and email.

On July 6, 2010, Frankel received the following email from Winterer's attorney containing an offer by Winterer to purchase Southwest's interest in both parcels of property:

> Here is his offer:
>
> Purchase [Southwest's] interest in both parcels for $325,000.00;
>
> [Southwest/co-owner] deliver clear marketable fee simple title to both parcels via warranty deed;
>
> Closing to take place at a title company of our choice within 30 days of signed Agreement.
>
> Both parties split the past due tax obligations and [Southwest] pays for ½ of the 2010 taxes, up to date of closing;
>
> Both parties dismiss their claims in the Partition suit with prejudice;
>
> [Co-owner, Southwest], Winterer and Arch Material Handling execute a document containing mutual releases, non-disclosures and nondisparagement agreements.
>
> And, of course, both parties split your fee.

Frankel forwarded the email to Southwest's attorney, who responded later that same day with this email:

> My client will accept Mr. Winterer's offer below. We will prepare a settlement agreement and mutual release reflecting the below terms. Thanks for your help.

On July 9, 2010, Southwest filed a memorandum with the court stating the matter

was passed for settlement. On July 22, 2010, Southwest sent its draft settlement agreement and mutual release ("Draft") to Winterer. After attempts by Southwest's counsel to obtain a signed copy, Winterer informed Southwest on August 16, 2010, that he would not sign the Draft unless it made the purchase contingent upon Winterer obtaining financing.

On August 23, 2010, Southwest filed a motion to enforce the settlement. Winterer argued in response that the Draft included a new term not included in the email correspondence, and thus no settlement had been reached. In the Draft, Southwest had informed Winterer that a lawsuit by a third party was pending against Southwest, related to the properties on Plymouth Avenue, and that Southwest would agree to indemnify Winterer for any liability arising out of that lawsuit. It was this term that Winterer argued defeated the settlement. The trial court found that the email communications of July 6 had established a settlement agreement in their own right, that the Draft sent on July 22 merely informed Winterer of a pending lawsuit, that in fact such lawsuit was no longer pending as of October 20, 2010, and therefore Southwest's motion to enforce the settlement reached on July 6, 2010, was sustained. After unsuccessful attempts to execute and carry out the terms of the settlement agreement with Winterer, Southwest filed a motion for sanctions with the trial court on November 8, 2010. In Winterer's response, he contested the validity of the court's order enforcing the settlement and requested an evidentiary hearing to determine whether there was in fact a settlement reached between the parties. The trial court heard argument, during which time Winterer stated that he could not obtain the necessary financing to purchase the property. The trial court granted Winterer additional time to prove this fact

to Southwest and encourage a new settlement agreement. Winterer produced only one bank's letter denying financing, and Southwest filed an amended motion for sanctions.

On June 7, 2011, the trial court entered judgment in favor of Southwest. The trial court ordered Winterer to pay $325,000 to Southwest, and Southwest in turn to deliver a special warranty deed in accordance with the original settlement agreement reached by email on July 6, 2010. Additionally, the trial court ordered Winterer to pay Southwest's reasonable attorney's fees together with the costs of the proceedings. Finally, the trial court dismissed both the underlying partition action by Southwest and Winterer's counterclaim without prejudice. Winterer appeals.

*Scope of Appeal*

■ Winterer's sole point on appeal is that the trial court erred in entering judgment in this case without first holding an evidentiary hearing to determine whether a settlement agreement existed. The parties disagree about whether Winterer may now on appeal dispute the existence of a settlement. Because this appeal arose from the trial court's judgment on Southwest's motion for sanctions and after the trial court had already determined a settlement existed in its order enforcing the settlement agreement, Southwest argues that only the propriety of sanctions may be the subject of this appeal. We disagree.

■ The right to appeal is purely statutory, and is appropriate only from final judgments, with certain exceptions not applicable here. Section 512.020, RSMo. (2000); *Transit Cas. Co. ex rel. Pulitzer Publ'g Co. v. Transit Cas. Co. ex rel. Intervening Employees*, 43 S.W.3d 293, 297 (Mo. banc 2001). "A motion to compel settlement adds to a pending action

a collateral action for specific performance of the settlement agreement." *Precision Invs., L.L.C. v. Cornerstone Propane, L.P.,* 220 S.W.3d 301, 303 (Mo. banc 2007). An order granting a motion to enforce the settlement is only interlocutory. *Stein v. Trampe,* 897 S.W.2d 209, 210 (Mo.App. E.D.1995). The underlying partition action remains pending until the court or the parties dismiss it. *See Bauman v. Monia,* 905 S.W.2d 127, 129 (Mo.App. E.D.1995).

In this case, when the trial court granted Southwest's motion to enforce the settlement, its order was not a final appealable judgment. The order ruled only on the existence of a settlement agreement; it did not finally dispose of all issues in the case. *See Transit Cas. Co.,* 43 S.W.3d at 298 (final judgment disposes of all issues); Mo. R. Civ. P. 74.01 (2010) (must be denominated "judgment"). The final judgment in this case came upon the trial court's ruling on Southwest's motion for sanctions, and Winterer timely appealed this judgment.

■ Southwest further argues that because Winterer did not file a motion to reconsider the order enforcing the settlement, or at that time ask for an evidentiary hearing, Winterer has waived this argument on appeal. We disagree. Winterer put the trial court on notice of his objection to the existence of a settlement agreement, both in his response to Southwest's motion to enforce the settlement agreement, and in his response to Southwest's motion for sanctions. He did not have to ask specifically for an evidentiary hearing regarding the motion to enforce the settlement. *See Eaton v. Mallinckrodt, Inc.,* 224 S.W.3d 596, 599 (Mo. banc 2007) (trial

court determines whether to hold hearing before final judgment on motion to enforce settlement). Winterer presented his argument to the trial court and raised it on appeal after final judgment, thus we may consider it.

*Standard of Review*

■ Our review of a court-tried case [1] is governed by the principles set forth by the Missouri Supreme Court in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* Additionally, we review a trial court's order of sanctions for abuse of discretion. *Sotirescu v. Sotirescu,* 52 S.W.3d 1, 7 (Mo.App. E.D.2001). We will not set aside the trial court's decision "absent a showing of arbitrary or capricious exercise of its discretion." *Id.*

*Discussion*

■ On a motion to enforce a settlement, the moving party "must prove the existence of the agreement by clear, convincing and satisfactory evidence." *Eaton,* 224 S.W.3d at 599 (quoting *Landmark Bank v. First Nat. Bank in Madison,* 738 S.W.2d 922, 923 (Mo.App.1987)) (internal quotations omitted). The trial court found that a settlement had been reached on July 6, 2010. Winterer did not dispute the authenticity or contents of the emails of July 6, 2010, but rather argued that Southwest added a variant term on July 22, 2010, which constituted a rejection and counter-offer, rather than an acceptance,

---

1. While the trial court did not enter final judgment on Southwest's motion to enforce the settlement, following both that motion and Southwest's motion for sanctions, the trial court acted as a fact-finder, viewed exhibits attached to the memoranda of law filed by the parties, and heard oral argument. In effect, the full action below was a court-tried case on the merits. *Cf. Barton v. Snellson,* 735 S.W.2d 160, 161 (Mo.App. E.D.1987).

citing *Tinucci v. R.V. Evans Co.,* 989 S.W.2d 181, 184 (Mo.App. E.D.1998).

■■■ Agreements to settle are governed by contract law. *Tirmenstein v. Central States Basement & Foundation Repair, Inc.,* 148 S.W.3d 849, 851 (Mo.App. E.D.2004). However, the aspect of contract law cited by Winterer addresses a variant term contained in the acceptance, which then transforms the attempted acceptance into a rejection and counter-offer. *Id.; Tinucci,* 989 S.W.2d at 184. In contrast here, the trial court noted the emails of July 6, 2010, showed both an offer and an acceptance, with the alleged variant term coming weeks later. Because the email acceptance on July 6 assented to the terms of the offer and no more, we agree that those emails reflected a valid settlement. *Cf. Am. Nat. Ins. Co. v. Noble Communications Co., Inc.,* 936 S.W.2d 124, 132 (Mo.App. S.D.1996) (stating the converse: mutuality of agreement not present when no mutuality of assent to proposed terms). Thus, the Draft of July 22, 2010, was not a counter-offer masquerading as an acceptance. The original offer had already been accepted on July 6.[2] The trial court correctly applied contract law in finding a settlement agreement.

Furthermore, the trial court also found that the third-party lawsuit, which constituted Winterer's sole objection to the settlement agreement, no longer existed at the time of its decision on the motion to enforce. Neither party has disputed this fact. Therefore, the trial court's order determining that a settlement was reached on July 6 was supported by substantial evidence and was not against the weight of the evidence.

None of these facts had changed when the trial court later entered its judgment on Southwest's motion for sanctions. No new factual dispute regarding the settlement agreement had been raised. The key difference was that Winterer argued that he could not carry out the terms of the settlement because he could not obtain financing. The trial court gave Winterer an opportunity to prove this and the parties an opportunity to come to a new settlement agreement in light of this, but Winterer did not produce satisfactory proof of his inability to obtain financing. The trial court's final judgment ordered performance of the specific actions the parties had agreed to in their July 6 settlement; namely, conveyance of the Plymouth Avenue properties to Winterer in exchange for $325,000. Under these circumstances, it was not error for the trial court to enter its judgment without an evidentiary hearing. *See Eaton,* 224 S.W.3d at 599 (hearing necessary to determine disputed facts and hear possible defenses). Point denied.

■■■ Regarding the award of sanctions, Winterer makes no claim that the trial court abused its discretion in ordering Winterer to pay Southwest's attorney's fees. We simply note that a trial court has broad discretion to control its docket and enforce compliance with its orders.[3] *See*

---

2. This is not to say that the existence of the third-party lawsuit in this case would have had no effect on the existing settlement agreement, for example, as grounds for rescission of the contract in equity. *See Osterberger v. Hites Const. Co.,* 599 S.W.2d 221, 227 (Mo. App. E.D.1980) (listing grounds for rescission of contract, including fraudulent misrepresentation of material fact and innocent misrepresentation or concealment made as a result of misapprehension or mistake). However, no such claim was made here.

3. Though the latter is typically accomplished through a motion for contempt, *City of Pagedale v. Taylor,* 790 S.W.2d 516, 518 (Mo.App. E.D.1990), Winterer does not dispute the authority of the court to enter sanctions here, as opposed to making a finding of civil contempt, and we do not consider it.

*Sotirescu,* 52 S.W.3d at 7 (control of docket). *Cf. City of Pagedale v. Taylor,* 790 S.W.2d 516, 518 (Mo.App. E.D.1990) (enforce compliance through civil contempt). The record shows Winterer intentionally took no action to follow the trial court's order enforcing the settlement.[4] The trial court did not abuse its discretion in awarding to Southwest attorney's fees spent pursuing its motion to compel and motion for sanctions, given that those actions would have been unnecessary but for Winterer's refusal to perform his court-ordered obligations. *Cf. City of Pagedale,* 790 S.W.2d at 516 (award of attorney's fees is meant to compensate aggrieved party for losses or damages sustained by reason of contemnor's noncompliance).

### Conclusion

The trial court's finding of a valid settlement agreement was supported by substantial evidence and was not against the weight of the evidence, and the trial court did not err in entering its judgment without an evidentiary hearing. The trial court did not abuse its discretion in awarding attorney's fees to Southwest, in light of Winterer's intentional disregard of the trial court's order. We affirm.

CLIFFORD H. AHRENS, P.J., and ROY L. RICHTER, J., concur.

4. In fact, Winterer admits this in his brief on appeal, saying, "Appellant respectfully disagreed with the Court's Order and refused to pay the $325,000 to Respondent."