Diane MAGRUDER, Appellant,

v.

Betty PAULEY, et al., Defendant,

Susan Myers, individually, Susan Myers Revocable Trust, Marshelle Clark, individually and Marshelle E. Clark, P.C., Respondents.[1]

Nos. WD 75513, WD 75638.

Missouri Court of Appeals, Western District.

Oct. 8, 2013.

1. Respondents filed a separate appeal, which was consolidated with this matter. Respondents' brief indicates that it contains a "Cross

Appeal." However, they raise no point of error and solely request that the trial court's judgment be affirmed.

Anthony W. Bonuchi and William E. Quirk, Kansas City, MO, for appellant.

Thomas M. Harrison and Bryan C. Bacon, Columbia, MO, for respondents.

Before Division Two: THOMAS H. NEWTON, Presiding Judge, KAREN KING MITCHELL, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

### Introduction

Four real estate agents formed a limited liability company and jointly owned a real estate franchise. When one member, Diane Magruder ("Magruder"), withdrew from the company, the others refused to comply with the existing Operating Agreement which required that the remaining members obtain an appraisal of the company and then pay the withdrawing member twenty-five percent of the appraised value. Early in the litigation, a bench trial was held after which the court granted specific performance of the contract to Magruder. Later, a jury awarded damages to Magruder. Yet, to this day, the specific performance of the contract ordered by the trial court has not been completed. Thus, Magruder comes before us appealing the trial court's final judgment in that it brought her no closer to receiving the specific performance that she was granted.

On appeal, Magruder raises three points. First, Magruder alleges that the trial court erred in not determining the company's appraised value because there

was sufficient evidence in the record that allowed it to do so. Second, Magruder contends that the trial court erred in denying her motion for contempt when the Respondents did not comply with the trial court's order of specific performance. And third, Magruder alleges that the trial court erred in denying her motion for attorney fees because such fees are provided for in the contract at issue.

The judgment of the trial court is affirmed in part, reversed in part and the cause is remanded with instructions.

## Factual and Procedural Background

Diane Magruder was a member[2] in a real estate franchise known as Assist2Sell Partners Realty, L.L.C. ("Assist2Sell" or "Company"), located in Columbia, Missouri. The three other members were Susan Myers, Marshelle Clark and Betty Pauley[3] (collectively, the "Respondents"). The Company was first formed on December 28, 2001 with three members and on January 2, 2002, the fourth was added. The four members each owned twenty-five percent of the company.[4] All four agreed to the terms of the Operating Agreement which had been drafted by Pauley. The Operating Agreement contained specific provisions regarding the rights of a withdrawing member. Section 20(D) requires, upon notice that a member is withdrawing, the remaining members to cause an appraisal of the business to be performed and purchase the withdrawing member's share for twenty-five percent of the appraised value:

> If any partner chooses to leave the partnership or dies after the third anniversary date of the formation of the partnership [12/28/2004], then an appraisal of the business will be commissioned and paid by the company and/or remaining partners. The remaining partners agree to purchase the departing partner's share in the business for 1/4 the appraisal value and the departing partner agrees to sell their share for 1/4 of the appraisal value. This shall be binding on the estates and/or heirs of any deceased partners.

Five years after it was formed, Magruder decided to withdraw from Assist2Sell. On November 24, 2006, Magruder's counsel sent a letter to the Respondents notifying them of Magruder's decision to withdraw and requesting the appraisal required by the Operating Agreement. In response to the letter, the Respondents held a meeting the following day at which they voted *not to* commission an appraisal and ordered the company's manager *not to* cooperate with an appraisal. The Respondents also refused to purchase Magruder's share. Magruder filed suit in the Circuit Court of Boone County on January 19, 2007 alleging counts for specific performance of the Operating Agreement (Count I), breach of contract (Count II), breach of fiduciary duty (Count III) and prima facie tort (Count IV). The Respondents answered and raised multiple counter-claims.

---

**2.** Although the agreement refers to a partnership, there is no dispute that the parties formed a limited liability company.

**3.** Although Betty Pauley neither filed a brief nor appeared in this appeal, she is, as a defendant in the matter below, nonetheless bound by our decision. Susan Myers and Marshelle Clark filed a joint brief.

**4.** Each of the members assigned their individual interests in Assist2Sell to separate entities that they each created, either a trust or Professional Corporation. These respective entities are parties to this action. For ease of understanding, we will refer to the members by their individual names, understanding that this is intended to incorporate their individual entities.

At the parties' request, the trial court bifurcated the parties' claims so that the claims based in equity would be heard at a bench trial and the remaining claims would be presented to a jury. On November 12, 2009, the court held a bench trial on Magruder's claim for specific performance and on Respondents' counterclaim seeking declaratory judgment. The Respondents sought declaratory judgment as to the parties' obligations under the agreement, arguing that the withdrawal provision did not apply unless a member had contributed capital into the Company. The court found in favor of Magruder on both her claim and on Respondents' counterclaim and granted the equitable relief of specific performance. On February 17, 2010, the court issued a Partial Judgment in which it found as follows:

> Finally, the Court notes that even if it were to consider the Parties' testimony concerning their intentions, the Defendants' evidence was inconsistent and contradictory, and the weight of credible evidence established that the Parties intended that there be a professional business valuation that included "blue sky" and other intangibles, in addition to the fair market value of the Company's real property.
>
> *The Court hereby orders said Defendants to commission and pay for an appraisal of the company, either jointly or by causing the Company to do so, and thereafter to purchase Magruder's share in the Company for 1/4 the appraisal value.* The appraisal shall be completed and payment to Magruder shall be tendered within 180 days of the effective date of this Order. The ap-

> praisal shall be performed by a professional business appraiser to be selected by Defendants, subject to the objection of Magruder and approval by the Court. The appraiser shall determine the fair market value of Magruder's interest in the Company as of November 24, 2006, based upon Magruder's right to share in distributions from the Company as an ongoing operation. The appraiser shall consider intangibles. (Emphasis added).

Following the court's order, the Respondents failed to commission an appraiser so the court ordered each party to suggest a proposed appraiser, from which the court could select one. On June 17, 2010, the court selected Jeff Guinn ("Guinn") and ordered that the Respondents commission him to perform the appraisal.[5] On August 6, 2010, just nine days before the appraisal was due, Guinn sent the court a letter asking for additional time to "complete his interviews of Defendants." Guinn did not consult Magruder in any fashion in regard to the appraisal. The court granted Guinn an extension through September 15. Guinn issued an appraisal that was produced to Magruder on September 17, 2010, though dated September 1.

In contradiction to the court's order, the appraisal specifically excluded the value of the real property and improvements. Page two contained the statement:

> The value does not include the Real Estate and Improvements. The Company owns the real estate and improvements which are not part of this appraisal. However, a fair market rent has been deducted from earnings, which allows the real estate and improvements

---

**5.** Relevant to the timeline of events is that the remaining bifurcated counts were tried to a Boone County jury on July 13–15, 2010. Count II for breach of contract was dismissed by agreement of the parties because it was filed as alternative claim for relief to Count I

requesting specific performance, which had previously been granted by the trial court following the bench trial. The jury found for Magruder and awarded her compensatory as well as punitive damages.

to be added to the value of the business in this report.

The appraisal valued Assist2Sell as being worth $275,000 as of December 31, 2006. The appraisal further deducted the amount of some salaries twice. Consequently, four days following receipt of the appraisal, Magruder filed a motion to show cause asking the court to find Respondents in contempt for violating the court's February 17, 2010 order by not satisfying the partial judgment on or before September 15, 2010. At a subsequent hearing held on October 12, 2010, the court heard argument on the motion, took it under advisement but concluded at the end of the hearing that the motion for contempt was "moot" because the parties were "proceeding differently at the moment." The court also ordered that Guinn provide a memorandum to the court addressing the deficiencies raised by Magruder and then either supplement the appraisal or state that the deficiencies do not affect the outcome of the appraisal. The court stated further that "at that point, you know, his numbers are either going to be good or he's going to change it." A week later, Magruder submitted questions regarding her concerns about the appraisal to Guinn. Guinn gave written answers to these concerns but refused to supplement his appraisal without being paid additional sums by the Respondents. Ultimately, and almost one year past the court's deadline for completion of specific performance,[6] Magruder filed a Motion for Judicial Determination of Business Value and attached an appraisal of the "missing" value of the real estate to her motion.[7] Upon learning at a subsequent hearing that the Respondents had never submitted Guinn's appraisal to the court, Magruder filed copies of Guinn's appraisal, the questions posed to Guinn, Guinn's responses sent via email, and an email from a lender confirming the outstanding balance on the real estate loan as being $515,198.92 as of December 11, 2006. All parties had access to these documents prior to Magruder's filing of them with the court. The court at that point had all the necessary documents before it to determine whether the appraisal complied with its order, or alternatively, to determine the value of the company.

The court heard argument on September 6, 2011, September 9, 2011, and October 3, 2011, and at each hearing, ordered the parties to "work it out" and eventually asked for proposed final orders from each party. Also presented at these hearings were various other motions concerning attorney fees, attorney fee liens and garnishments of the Respondents' wages. Suffice it to say that a significant amount of time and resources were devoted to the issues, including a bench trial, a separate jury trial and at least eleven post-trial hearings spanning the course of five years, involving multiple counsel and large sums of attorney fees.

6. The record reflects that following the October 12, 2010 hearing, the parties changed legal counsel, requested attorney fees, and argued over the attachment of attorney fee liens to any recovery, all of which may partially explain the ten-month gap in activity concerning the appraisal. Magruder's Motion for Judicial Determination was filed on August 11, 2011.

7. The existence of an appraisal of the company's real estate was disclosed to Magruder during the jury trial that took place on July 13–July 15, 2010. Unbeknownst and undisclosed to Magruder, the Respondents had commissioned a real estate appraisal of the company's real property in January, 2007 just one month after Magruder sent her notice of withdrawal from the business. This appraisal valued the company's real estate at $625,000. The timely disclosure of this appraisal may have saved the parties years of litigation, thousands of dollars in legal fees and countless hours of judicial resources.

The court issued a Final Order on January 5, 2012 that affirmed the jury's verdicts and simply attached the earlier Partial Judgment with reference to neither the disputed appraisal nor to the attorney fees issue. The docket sheet for that date, however, reflects that both Magruder's motion for attorney fees, as well as her motion for a judicial determination of the company's value, were denied. The court later issued an Amended Final Judgment on June 20, 2012, to correct a clerical mistake in the order. Neither final judgment contained a resolution of the appraisal issues nor a determination of the company's value; thus, Magruder was never afforded the specific performance of the contract as ordered by the court. This appeal follows.

## Standard of Review

The standard of review for a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Fedynich v. Massood*, 342 S.W.3d 887, 890 (Mo. App.W.D.2011). Thus, the judgment of the trial court will be affirmed unless insufficient evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* The appellate court defers to the factual findings of the trial court, which is in a superior position to assess credibility. *Id.* It will, however, independently evaluate the trial court's conclusions of law. *Id.* Contract interpretation and questions of contract ambiguity are issues of law that will be reviewed *de novo*. *Id.*

## I.

In Point One, Magruder contends that the trial court erred "in denying [her] requests to include a determination of Assist2Sell's value in the final judgment because there was evidence of Assist2Sell's value in the record in that Magruder submitted business and real estate appraisals showing that Assist2Sell had a fair market value of $558,000."

## Analysis on Point I

Magruder contends that in light of the deficient business appraisal obtained by the Respondents, the court should have acted in equity and included a valuation in its final order because there was sufficient evidence in the record for the court to make such a valuation. Specifically, Magruder asserts that because both the business appraisal and the value of the company's real estate were submitted to the court, the court had before it, in essence, the full appraisal it ordered. Respondents contend that the trial court did not have sufficient evidence before it to make a valuation because the evidence "consisted of hearsay statements and other inadmissible evidence." We agree with Magruder for three reasons. First, there was sufficient evidence in the record for the court to determine the Company's value. Second, the court found that the contract was breached by Respondents. And third, a court sitting in equity has the authority to do what is necessary to afford complete relief to the prevailing party.

### A. Evidence of Assist2Sell's Value in the Record

Magruder contends that although an appraisal that included real estate was not obtained by the Respondents, there was sufficient evidence before the trial court to determine a valuation of the business. Magruder filed with the court Guinn's business appraisal, the real estate appraisal previously commissioned by the Respondents, and Guinn's answers addressing the deficiencies in his appraisal. Guinn's responses confirmed that once a real estate appraisal was added and the duplicative salary deductions corrected, the appraisal would conform to the court's order. Guinn

stated in emails to counsel that he could modify the report himself but that he would charge to do it. Respondents refused to pay for a modification because they believed that the appraisal produced was sufficient. Magruder refused to incur more costs as it was the Respondents' responsibility to pay for the appraisal. The appraisal obtained by Respondents specifically excluded "real estate and improvements." It valued the Assist2Sell franchise at $275,000.

As to the sufficiency of the information before the court, the main "missing" elements were an appraisal of the real property owned by the company and a correction of the duplicative deduction of salaries in Guinn's appraisal. In response to additional questions sanctioned by the court, Guinn agreed that the value of real estate owned by the company was not included in the appraisal but could be easily added. Guinn also responded that he did not know why certain salaries were deducted twice. He offered to correct the appraisal but, as noted above, **only if the Respondents agreed to it** and paid for it.

The real estate appraisal, commissioned by the Respondents, valued the real estate at $625,000. Magruder also filed with the court the Company's bank statement showing the debt on the real estate to be $515,198.92 as of the date closest to her withdrawal from the Company. This shows the value of the real estate after subtracting the debt to be $109,801.08 as of the relevant time frame.

The Respondents assert that this evidence was not competent evidence from which the court could deduce a business valuation. They contend that the answers provided by Guinn constituted hearsay. They also contend that the appraisal itself is hearsay since they were not given an opportunity to question Guinn concerning it. Respondents argue that the hearsay

statements made by Guinn "were never introduced into evidence with proper evidentiary and procedural safeguards." Further, Respondents assert that Guinn's statements were "not subject to cross-examination and themselves are ambiguous in many cases" and that Magruder is taking portions of Guinn's appraisal "out of context."

Notably, the Respondents delayed in hiring an appraiser until the court ordered them to do so on June 17, 2010, four months after the court initially ordered them to perform this task, and only three weeks before the jury trial was set to begin. Further, Guinn was the appraiser suggested to the court by the Respondents as the proper appraiser that should be used to value the business, was paid by the Respondents, relied solely on information provided by the Respondents and refused to change anything unless approved by the Respondents. He was equally available or even more available to the Respondents to call before the court if they wished to question his appraisal or his methodology.

### B. Specific Performance as a Remedy Constitutes a Breach of Contract

Magruder argues that since the Respondents obtained a deficient appraisal, the trial court had the authority to determine a business valuation in its final order. The Respondents maintain that the trial court never found them to be in breach of the contract; thus, they argue that Magruder cannot now seek a remedy that requires a finding that the contract was breached by them. They further assert that because Magruder sought only specific performance, the court was without authority to modify its order to include a business valuation in its final judgment or order its payment. However, the trial court's judgment for specific performance ordered the Respondents to not only obtain a proper

appraisal, but also to pay Magruder twenty-five percent of the value of the business as determined by the appraisal.

 The trial court specifically found that the Respondents "failed and refused to commission and pay for an appraisal . . . and refused to purchase Magruder's share in the Company pursuant to . . . the Withdrawal Provision" of the contract. It is difficult to imagine how this could be construed as anything short of a finding that the Respondents breached the contract. Further, "[t]he general rule of the law of contracts is well settled that in certain cases a breach of contract may give rise to two remedies." *Savannah Place, Ltd. v. Heidelberg*, 122 S.W.3d 74, 81 (Mo.App. S.D.2003) (citation omitted). "One is an action at law for damages for the breach; the other is a suit in equity for the specific performance of the contract." *Id.* Had there been no breach, then there would be no remedy to order. Specific performance is a remedy to a breach of contract and here it was ordered. *Id.* A breach of contract is implicit in the court's ordering of the remedy of specific performance.

## C. Trial Court's Authority Sitting in Equity

Magruder contends that because the Respondents failed to comply with the order of specific performance, the court had authority to enforce its order. Respondents, however, contend that because a business valuation was not the relief Magruder requested under this count, the court was without power to determine a business valuation.

After the court found that the contract's withdrawal provision should be enforced, it then ordered specific performance of that provision. The specific performance of the contract included two actions: (1) the Respondents were to obtain a proper appraisal, and (2) "thereafter to purchase Magruder's share in the Company for 1/4 the appraisal value." Initially a dispute arose among the parties as to what was required to be included in the appraisal. The court found that the contract contained an ambiguity regarding how the business should be valued, based on a potential conflict between the provision addressing the withdrawal of a member and the provisions addressing the dissolution of the company. Following a hearing, the court added to its order for specific performance a requirement that the appraisal include real estate and intangibles.[8] The Respondents argue that this ended the trial court's authority as to the claim of specific performance. The Respondents appear to ignore the portion of the trial court's judgment that states, "thereafter to purchase Magruder's share in the Company for 1/4 the appraisal value."

In *Jhala v. Patel*, the Eastern District of this court faced an analogous situation in which the plaintiff sought only specific performance, yet the trial court awarded both specific performance and monetary damages. 154 S.W.3d 12 (Mo.App.E.D.2004). There, as here, the defendant contended that the trial court was without power to award anything beyond the specific per-

---

8. Another section of the contract that addresses the dissolution of the company required that each partner's interest be determined by the fair market value of the company at the time of the dissolution. Respondents had argued that this created an ambiguity as to the meaning of "appraisal" found in the section concerning a partner's voluntary withdrawal from the partnership. The trial court incor-

porated language into the order to clarify the requirements of the appraisal. The trial court set the requirements of the appraisal consistent with section 347.103.2, which addresses the valuation of an L.LC. upon the withdrawal of a member. All statutory references are to RSMo 2000 cumulative as supplemented unless otherwise indicated.

formance requested by the plaintiff. *Id.* at 18–19. The court, however, relying on Supreme Court precedent, held that "any circuit court with jurisdiction over the parties and a controversy can render whatever relief is required, be it equitable or a request for damages." *Id.* at 19 (quoting *State ex rel. Leonardi v. Sherry,* 137 S.W.3d 462, 472 (Mo. banc 2004)). The court further noted that although the plaintiff "did not seek damages to remedy a claim at law, but rather sought specific performance, 'and such other relief as the trial court deemed proper,'" a "court in equity can properly undertake to do full, adequate and complete justice between the parties when justified by the evidence." *Id.* at 19. It further confirmed that a "court sitting in equity may award monetary compensation in addition to specific performance where necessary to effectuate full and complete relief." *Id.* at 19 (citations omitted). If a court in equity can go beyond the specific performance requested and determine monetary damages that were not sought, it follows then that it can lift the parties out of a contentious quagmire and determine a business valuation in order to effectuate full and complete justice to the prevailing party. *See also Licare v. Hill,* 879 S.W.2d 777, 779 n. 4 (Mo.App.E.D.1994) (further noting that the doctrine of equitable clean-up allows a court sitting in equity to "determine legal issues incident to the entire case"); *Meyer v. Lofgren,* 949 S.W.2d 80, 84 (Mo.App. W.D.1997) (citing the use of the doctrine of equitable clean-up in Missouri).

■ As the Eastern District of this court held in *Licare,* a court sitting in equity can do what it deems necessary to make the prevailing party complete when fashioning a remedy for a breach of contract. *Licare,* 879 S.W.2d at 779. Thus, although the count in the petition which in the alternative requested monetary dam-

ages for breach of contract was dismissed once the original order granting specific performance was entered, the court retained authority to grant additional remedies to provide complete relief. *Id.* Further, at the time the order for specific performance was granted, neither Magruder nor the trial court could have anticipated the extent to which the Respondents would go to avoid compliance with the order for specific performance.

In an analogous case, our Supreme Court determined that a court sitting in equity could order relief beyond the specific performance requested by the plaintiff when specific performance was no longer an adequate remedy. In *JAS Apartments, Inc. v. Naji,* the owner of an apartment complex contracted with JAS Apartments to sell the complex. *JAS Apartments, Inc. v. Naji,* 354 S.W.3d 175, 177 (Mo. banc 2011). The owner's wife, however, disagreed with the sale and refused to sign the documents to allow her marital interest in the property to be sold. *Id.* at 177. JAS filed suit seeking specific performance of the contract. Eight years later, the action was still being litigated. *Id.* at 185, n. 12. The Supreme Court noted that JAS no longer sought the equitable remedy of specific performance and that "[i]t may be that, for other reasons, the equitable remedy of specific performance no longer remains an appropriate remedy." *Id.* at 186. "Should the circuit court on remand so determine, an award of damages to JAS may be appropriate." *Id.* The court went on to state that "the circuit court will have the power to assess whether specific performance remains an appropriate remedy and, if not, to award JAS compensatory relief." *Id.* at 187. The court further ordered the circuit court to calculate an award of attorney fees based on a contract provision. *Id.*

A trial court thus has power in equity to determine the appropriate remedy and potentially change its determination during the litigation from specific performance to compensatory damages based on changing circumstances of the parties and the subject of the litigation. Indeed, the Supreme Court noted further that when the performance by a party, as originally ordered, becomes impossible to perform or no longer appropriate, a trial court may "decree a pecuniary judgment in place of the purely equitable relief originally demanded." *Id.* at 187. Further, where, as here, a party refuses to perform, the court may use its contempt powers, other enforcement mechanisms and/or decree a pecuniary judgment in place of the equitable relief originally granted. *Id.*

In this case, pursuant to the contract and the trial court's order, it was the obligation of the Respondents to obtain and pay the cost of a proper appraisal of the business, including its real property and then it was the Respondents' obligation to pay Magruder twenty-five percent of that value. There was no obligation for the trial court to approve the final appraisal, but if either party disagreed with it, it was their obligation to bring that issue before the court. In this case, an appraisal of the company's real property was completed by an appraiser selected by and paid for by the Respon-

dents before the litigation ensued that showed the value of the real property, minus the debt thereon, to be $109,801.08. Further, there was a business appraisal of the company ordered by the court and prepared by Guinn, but it was done without including the real property owned by the Company. Guinn acknowledged in writing that this appraisal had a discrepancy regarding certain salaries, but set forth what that discrepancy entailed. The business appraisal, as modified by just two of the errors that Guinn acknowledged, established the "Value" of the business to be $333,078.26.[9] The business appraisal and real estate appraisal taken together, along with the current assets of $116,526 and deduction of $1,117 in liabilities, showed the total Indicated Value of the business as of November 26, 2006 to be $558,288.34. Both of the appraisals were prepared by appraisers selected by the Respondents and paid for by the Respondents, as required by the contract and the trial court's order.[10] Both were discussed in every hearing and eventually filed with the court. If either party disagreed with the amounts contained therein, it was up to that party to raise those issues with the court.

Magruder, in fact, did raise issues with Guinn's appraisal due to its failure to include the real estate and the discrepancy regarding the salaries. Those issues were addressed by the parties and the apprais-

---

9. Respondents would not pay for the appraisal to be corrected to include the real estate value nor to fix the salary error likely because doing so would increase the value of the Company and thus increase the Respondents' liabilities to Magruder. However, the figures were present in information submitted to the court and only required three simple steps to adjust the appraisal such that it complied with the court's order as follows: (1) add the erroneous deduction of $42,000 in management salary back into the "Net Cash Flow" to equal $76,608; (2) divide the "Net Cash Flow" by the 23.0% "Rate of Return" which results in a "Value" of $333,078.26; and (3)

add the "Equity in Real Estate" of $109,801.08 to the "Value" of $333,078.26 which results in a total "Indicated Value" of $558,288.34.

10. As noted above, Guinn was the appraiser suggested by the Respondents and was later appointed by the trial court to perform the appraisal. Since the Respondents were responsible for paying for an appraisal that met the court's order, they are responsible for any additional fees required in order to correct the appraisal.

er. Respondents did not question the business valuation of Guinn's appraisal nor did they dispute the proposed corrected valuation offered by Magruder at any time. Their only objection lodged to the appraisal was to what should be included in it, which was determined by the court. Notably, when Respondents filed a response to Magruder's motion for a judicial determination of a business value, rather than disputing Magruder's proposed value, Respondents alleged that Magruder was instigating a new action: "In essence, Plaintiff has initiated an entirely new civil action under the guise of a motion in this already pending action" and is asking for "an entirely new money judgment in favor of Plaintiff." Respondents did not challenge the proposed modified value of the Company.

■ Based on these facts, we hold that it was error for the court sitting in equity not to effectuate full relief and order the Respondents to pay twenty-five percent of the entire business valuation together with interest from a date to be determined by the trial court on remand. While the contract did not set a deadline for completion of the appraisal and payment for the interest of the withdrawing party, the trial court shall determine a reasonable time for the performance of these tasks following the date of the notice of withdrawal and shall assess statutory interest from that date.[11] Indeed, where specific performance is ordered but not completed, the court retains authority to modify its order.

> It is a settled maxim that equity, once having acquired jurisdiction of a cause, will not relinquish it without doing full and effective justice between the parties, even though, to right the wrong complained of, equity must resort to a remedy within the traditional province of law, such as a judgment for money for restitution.

*Kopp v. Franks,* 792 S.W.2d 413, 425–26 (Mo.App.S.D.1990) (citation omitted).

Here, specific performance did not occur. Thus, the trial court should have modified its order to include a valuation because the Respondents failed to complete the specific performance that the contract required and the court ordered. Point One is granted.

## II.

■ In Point Two, Magruder argues that the trial court erred in denying her motion for contempt because the Respondents failed to comply with the court's order of specific performance. We disagree.

### Analysis on Point II

■ "It has been said that there are four classes of contempt: civil; criminal; direct; and indirect." *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 578 (Mo. banc 1994) (citation omitted). "Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered." *Id.* The purpose of civil contempt is to coerce compliance with the relief granted. *Id.* (citing *Teefey v. Teefey,* 533 S.W.2d 563, 566 (Mo. banc 1976)). "Its function is to provide a coercive means to compel the other party to the litigation to comply with relief granted to his adversary." *Teefey,* 533 S.W.2d at 566.

■ In civil contempt cases, the ruling of the trial court will not be disturbed

---

11. When a contract does not set forth a specific time for its performance, the law will imply a reasonable time. *Shellabarger v.*

*Shellabarger,* 317 S.W.3d 77, 82 (Mo.App.E.D. 2010).

upon review by this court absent a clear abuse of discretion. *Stuart v. Ford,* 292 S.W.3d 508, 513 (Mo.App.S.D.2009). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]" *Id.* (citation omitted). "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.* "[D]iscretionary rulings are presumed correct, and the appellant bears the burden of showing an abuse of discretion." *Id.* at 513–14.

Here, the complaining party, Magruder, bore the burden of establishing a *prima facie* case for civil contempt. *Stuart,* 292 S.W.3d at 514. Magruder needed to prove: (1) the Respondents' obligation to perform an action as required by the court's order, and (2) their failure to meet the obligation. *Id.* Here, the Respondents did not, by September 15, 2010, obtain an appraisal that included real estate nor did they pay Magruder 1/4 of the appraisal's value. Thus, Magruder established a *prima facie* case.

Based on the foregoing, it is clear that the trial court had the power to grant an order of contempt as a coercive measure to force compliance with the court's order. *Id.* However, because the issue of contempt involves a subjective analysis of the parties' actions with regard to compliance, it is within the discretion of the court to grant relief. Notably, the parties were before the court both for a bench trial and a jury trial. In addition to the two trials, the court had already conducted five hearings with the parties by the time Magruder filed her motion for contempt. The court was free to believe or disbelieve the testimony of any witness. *Emmons v. Em-mons,* 310 S.W.3d 718, 725–26 (Mo.App. W.D.2010) (citation omitted). While we find the actions of Respondents to be egregious, in light of the discretion afforded the court in analyzing a party's failure to meet a deadline and because reasonable minds could differ, we find no clear abuse of discretion in the court's denial of the motion for contempt. Point Two is denied.

## III.

In Point Three, Magruder alleges that the trial court erred in denying her motion for attorney fees because an award of attorney fees is contained in the Operating Agreement. Respondents contend that the Operating Agreement only awards attorney fees to the prevailing party in the case of a "breach of contract." We agree with Magruder.

### Analysis on Point III

We follow the "American Rule," under which litigants generally bear their own attorney fees. *Cowbell, LLC v. Borc Bldg. and Leasing Corp.,* 328 S.W.3d 399, 407 (Mo.App.W.D.2010) (citation omitted). However, there are several exceptions to the rule, including where the payment of attorney fees is provided for by statute or contract. *See Rosehill Gardens, Inc. v. Luttrell,* 67 S.W.3d 641, 648 (Mo. App.W.D.2002) (with respect to attorney fees on appeal, a party may be allowed to recover these fees if they are based upon a written agreement that is the subject of the issues that are presented in the appeal). Here, Section 22(A) of the Operating Agreement provided that:

If the Company or any party obtains a judgment against any other party by reason of breach of this Agreement, a reasonable attorney's fee as fixed by the court shall be included in such judgment.

Magruder prevailed at the bench trial on specific performance, wherein the trial court found that Respondents failed to comply with the terms of the operating Agreement and ordered specific performance as a remedy. Magruder, therefore, was entitled to recover "reasonable attorney fees" under the terms of the Operating Agreement. "If a contract provides [for] the payment of attorney fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party." *Cowbell*, 328 S.W.3d at 407 (citing *Rx Recalls, Inc. v. Devos Ltd.*, 317 S.W.3d 95, 96 (Mo.App. E.D.2010)). A suit brought for specific performance does not alter that rule. *See, e.g., Vaughn v. Willard*, 37 S.W.3d 413, 417 (Mo.App.S.D.2001) (reversing trial court's denial of contractual attorney fees in suit for specific performance because if a contract provides for the payment of attorney fees in the enforcement of a contract provision, the trial court must award them to the prevailing party).

The Respondents contend that because the court's order did not "hold" that a "breach of contract" took place, the provision governing the payment of attorney fees does not apply. This argument is without merit. As previously established above, the remedy of specific performance is, in fact, a remedy to a breach of contract. *Savannah Place*, 122 S.W.3d at 81. Further, the trial court specifically found that the Respondents "failed and refused to commission and pay for an appraisal . . . and refused to purchase Magruder's share in the Company pursuant to . . . the Withdrawal Provision" of the contract. Thus, section 22(A) of the Operating Agreement is applicable here.

In addition to attorney fees being allowed in the contract which is at issue, we note further that the trial court could have awarded fees on the basis of noncompliance with the court's order of specific performance. In *SW Parts Supply Inc. v. Winterer*, the Eastern District of this court affirmed the award of attorney fees when the losing party "intentionally took no action to follow the trial court's order enforcing the settlement." 360 S.W.3d 349, 354–55 (Mo.App. E.D.2012). The court held that the trial court did not abuse its discretion in awarding to the plaintiff its attorney fees spent pursuing its motion to compel and motion for sanctions, given that those actions would have been unnecessary but for defendant's refusal to perform his court-ordered obligations. *Id.* at 355.

Respondents further contend that there was no evidence before the court as to what portion of the attorney fees were incurred in regard to the breach of contract claims for which attorney fees can be recovered and the tort claims for which attorney fees are generally not recoverable. This portion of Respondents' brief contains no supporting authority whatsoever for the argument asserted. "Rule 84.13(a) provides that allegations of error not properly briefed 'shall not be considered in any civil appeal.'" *In re Marriage of Weinshenker*, 177 S.W.3d 859, 864 (Mo. App.E.D.2005).

*Ex gratia* on this point we note the following. While the bench trial contained some claims based in tort, Magruder's Count I seeking the remedy of specific performance was a claim based on Respondents' breach of the contract, as was Respondents' Count V of their Counterclaim, which sought declaratory judgment as to Magruder's rights in the Company under the contract. "If the claims for relief have a common core of facts and are based on related legal theories and much of counsel's time is devoted generally to the litigation as a whole making it difficult to divide

the hours expended on a claim-by-claim basis, such a lawsuit cannot be viewed as a series of distinct claims." *Williams v. Fin. Plaza, Inc.*, 78 S.W.3d 175, 185 (Mo. App.W.D.2002) (citation omitted). "Instead, where a plaintiff's claims are related and she has obtained excellent results overall, her counsel should recover a fully compensatory fee that should not be reduced simply because she has not prevailed on every litigated claim." *Id.*

In sum, because Magruder was the prevailing party, she is contractually entitled to attorney fees under the Operating Agreement. Thus, attorney fees were required to have been awarded to Magruder. Point Three is granted.

### Conclusion

The judgment of the trial court is affirmed in part, reversed in part and the cause is remanded with instructions. Pursuant to Rule 84.14, in order to bring forth justice, we determine that the evidence before the court was that the appraisal of Assist2Sell as of November 24, 2006, was $558,288.34 and hereby order the Respondents [12] to pay one fourth of that amount to Magruder, or $139,572.08. Interest shall be awarded at the statutory rate on this amount. Interest shall accrue from the date determined on remand by the trial court as set forth above.

The cause is remanded to the trial court to hear evidence of attorney fees and for a determination of a reasonable amount of attorney fees and to award said amount to Magruder. We note that most of the fees could have been avoided but for the recalcitrance of the Respondents throughout this litigation. Further, Magruder is entitled to attorney fees on appeal. Although we have the ability and authority to determine the amount of attorney fees on appeal, the trial court is in a much better position to hear evidence and argument regarding the reasonableness of the requested fee, and also will be addressing the attorney fees issues identified above; therefore, we defer our authority on this issue to the trial court. *In re C.J.G.*, 358 S.W.3d 549, 559 (Mo.App.S.D.2012). We remand this issue to the trial court with directions to conduct a hearing to determine the reasonableness of the attorney fees requested on appeal and enter judgment accordingly.

Further the judgment is affirmed as to the damages assessed by the jury for the remaining claims that are not challenged in this appeal; to wit, as to Magruder's Count III, in favor of Magruder in the amount of $3,000 as actual damages jointly and severally against all Respondents and the amount of $25,000 as punitive damages solely against Pauley; as to Magruder's Count IV, in favor of Magruder in the amount of $5,000 solely against Pauley. We also affirm as to Respondents' Counterclaim, as to Respondents' Counts I, II, III, IV, VI and VII, judgment entered in favor of Magruder and against all Respondents; as to Respondents' Count V, judgment entered in favor of Respondents. In addition, the costs assessed as of the date of the jury trial in the amount of $3,760.45 are assessed against all Respondents jointly and severally. Any costs incurred following the jury trial may also be assessed

---

**12.** The individual Respondents including Defendant Pauley each created a separate business entity and transferred their individual ownership of Assist2Sell to these entities. These entities are also Respondents in this matter. To be clear, the individual members composing Assist2Sell, as individual Respon-dents, their respective correlating entities, as named in the trial court's Amended Final Judgment, dated June 20, 2012, shall be jointly and severally liable for the payment of the twenty-five percent of the business value as established herein together with the attorney fees and interest on that claim.

by the trial court against the Respondents on remand.

All concur.