

# Missouri Court of Appeals

### Southern District

#### In Division

THOMAS J. BROWN, III, Trustee of )
Thomas J. Brown, III, Revocable Trust )
U/A/D May 13, 2021, )
)
               Respondent, )  No. SD38280
)
  vs. )  FILED: October 30, 2024
)
DARREN and DAPHNE JERNIGAN, )
)
               Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF MISSISSIPPI COUNTY

Honorable David A. Dolan, Judge

### AFFIRMED AND REMANDED

In this dispute over a real estate "Purchase and Sale Agreement" (the "Agreement"), Darren and Daphne Jernigan (collectively, "Buyers") appeal from a judgment of specific performance, following a bench trial, in favor of Thomas J. Brown, III, acting in his capacity as Trustee of the Thomas J. Brown, III, Revocable Trust U/A/D May 13, 2021 ("Seller"). Buyers contend in two points relied on that the circuit court misapplied the law in awarding specific performance. Additionally, both Buyers and Seller filed motions seeking attorneys' fees on appeal in accordance with the terms of the Agreement. Because Buyers' points fail to demonstrate any reversible error by the circuit court, we affirm the circuit court's judgment,

grant Seller's motion for attorneys' fees, deny Buyers' competing motion, and remand the cause to the circuit court to determine and award reasonable attorneys' fees incurred on appeal by Seller.

## Standard of Review

"In suits of an equitable nature, we sustain the [circuit] court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Peet v. Randolph*, 157 S.W.3d 360, 363 (Mo.App. 2005) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We defer to the circuit court's "determinations of credibility and view the evidence and the inferences drawn therefrom in the light most favorable to the judgment." *DeClue v. McCann*, 463 S.W.3d 792, 795-96 (Mo.App. 2015). However, we independently evaluate the circuit court's conclusions of law *de novo*. *Fedynich v. Massood*, 342 S.W.3d 887, 890 (Mo.App. 2011). Such independent evaluation includes the circuit court's interpretation of a real estate contract. *ND-Sell, Inc. v. Greater Springfield Bd. of Realtors, Inc.*, 224 S.W.3d 623, 627 (Mo.App. 2007). The circuit court's judgment is presumed valid and the appellant has the burden of demonstrating that it is incorrect. *Harness v. Wallace*, 167 S.W.3d 288, 289 (Mo.App. 2005).

## Factual and Procedural Background

On November 3, 2021, Buyers entered into the Agreement with Seller to purchase a residence located at 404 E. Commercial in Charleston, Missouri, ("the Property"), for $900,000 and purchase certain furnishings within the Property for $100,000. The payment of these amounts was to occur as follows:

> A. **Earnest Money**. **One Hundred Thousand Dollars ($100,000.00)**, the receipt and sufficiency whereof is hereby acknowledged, paid to Seller upon execution of the Agreement as "**Earnest Money**", to be credited towards the Purchase Price at Closing, and in the event Closing does not occur, the

2

Earnest Money shall be non-refundable, except as provided in Section[s] 3 and 10 [of] this Agreement.[1]

B. **Balance**. The balance of **Nine Hundred Thousand Dollars ($900,000.00)**, as the same may be adjusted as provided herein, by certified check or wire transfer at the Closing.

Seller incurred various expenses in reliance on Buyers' representations (during and following the execution of the Agreement) that the sale of the Property would go through per the terms of the Agreement. However, on April 27, 2022, less than forty-eight hours prior to closing, Buyers informed Seller that they would not be purchasing the Property. As relevant here, section 10 of the Agreement contains the following provisions:

A. **By Buyer**. In the event of a default under the Agreement by Buyer[s], Seller may, at Seller's option: elect to terminate this Agreement by written notice to Buyer[s], in which event, the Earnest Money shall be paid to Seller as full liquidated damages and not as a penalty (the parties hereto acknowledging that Seller's damages as a result of such default are not capable of exact ascertainment and that such liquidated damages are fair and reasonable); or seek relief in an action for specific performance, and recover damages suffered as a result of the delay in the sale of the Property, in which event the Seller shall be entitled to recover its costs and attorneys['] fees as determined by the court; provided, however, that an election by a party to pursue one or the other of the foregoing remedies shall not preclude that party from pursuing the other remedy until full satisfaction shall have been received on the remedy pursued.[2]

After Buyers failed to purchase the Property, Seller filed a two-count amended petition for breach of contract. In the first count, Seller sought "specific performance of the Agreement," including "$900,000[] in exchange for the Property" and "[d]amages caused by [Buyers]' delay in performance, including but not limited to, expenses to move out of the Property, expenses to move back into the Property, real estate taxes, homeowners' insurance, utilities, lawn

---

[1] While section 10 of the Agreement, which we quote and discuss *infra*, is central to the issues raised in this appeal, section 3 has no such relevance and will not be discussed.

[2] In further addressing costs and attorneys' fees, section 10 of the Agreement also provides, "C. **Attorney's Fees**. In the event of litigation subsequent to default, the prevailing party shall be entitled to recover its reasonable attorneys' fees and its litigation costs, including court costs, from the non-prevailing party."

maintenance, HVAC expense and other expenses, all of which continue to accrue[.]" "In the alternative," upon a determination "that [Seller] is not entitled to specific performance," Seller sought, in the second count, "damages of $100,000 representing the earnest money paid pursuant to the Agreement." In both of these counts, Seller additionally sought compensation for any attorneys' fees incurred.

Buyers responded by way of an answer and a counterclaim against Seller. Buyers alleged that Seller initiated the underlying litigation "notwithstanding [Buyers'] acquiescence and agreement that [Seller] retain said $100,000[] earnest money as liquidated damages"; that Seller "knew or should have known that the equitable remedy of specific performance is not available to enforce a contract where the contract provides for a legal remedy in the event of default"; and that, as a result of Seller pursuing litigation, Buyers incurred damages defending against said litigation.

Following a bench trial, the circuit court found that Buyers breached the Agreement. The circuit court noted that the Agreement "clearly gives [Seller] the option of choosing specific performance or liquidated damages in the event of [Buyers]' breach and the giving of such an option is allowed by Missouri law." Regarding the former remedy, the circuit court determined "that [Seller] has no adequate remedy at law and is entitled to specific performance" and also discussed certain equities in support of that determination.[3] The circuit court determined specific performance as "being $900,000 paid by [Buyers] to [Seller] in exchange for the Property." Ultimately, Buyers were ordered to pay $900,000 to Seller in exchange for a general warranty

---

[3] For example, the circuit court observed that "[t]he evidence showed that [Buyers] had months to back out of the Agreement before [Seller] took his actions, encouraged [Seller] to move out sooner, told [Seller] they were ultimately going to honor their commitment, and then never informed [Seller] they would not close on the Property"; and "[Buyers] admitted at trial that [they] are able to purchase the Property."

4

deed for the Property, $57,254.88 in damages incurred by Seller "for delay[,]"[4] and $27,586.85 for Seller's attorneys' fees. Buyers, however, received a $100,000 credit against these sums for the earnest money already deposited with Seller. Seller's remaining count for liquidated damages and Buyers' counterclaim were denied. Buyers timely appeal this judgment.

### Discussion

Buyers raise two points relied on, which, due to the similar issues involved, we discuss together. Under each point, Buyers concede they "will not contest the sufficiency of the evidence or the factual findings of the [circuit] court." Buyers "only contest the [circuit] court's conclusions of law and application of the law." In point 1, Buyers assert that the circuit court erred because Seller had an adequate remedy at law precluding specific performance, in that "[Seller] had a valid liquidated damages provision of the traditional 10% downpayment of earnest money, which satisfied [Sellers]'s actual damages." In point 2, Buyers assert that the circuit court erred because inclusion of the specific-performance remedy in the Agreement "does not do away with the mandatory prerequisites for equitable relief that there be no adequate remedy at law, *and* does not do away with the doctrine that specific performance is not a matter of right, *and* regardless, in this contract, election can only be had until satisfaction."[5] (Emphasis added.) We discuss these contentions in reverse order.

Thus, we begin by addressing Buyers' contention in point 2 that in the Agreement "election can only be had until satisfaction." Indeed, following the provision that Seller may

---

[4] These damages were itemized as follows: $44,225 for "Labor"; $6,739.20 for "Mileage"; $1,065.43 for "Trailer and Truck Rental"; $95 for "Tire for Trailer Rental"; $1,396.93 for "Gas for Truck Rental"; $2,733.32 for "Storage Unit Rental"; and $1,000 for "Packing Material[.]"

[5] We note that "[b]y attempting to combine a wide array of distinct legal arguments under a single point, [Buyers'] point is multifarious and preserves nothing for review." ***State ex rel. Vandenboom v. Board of Zoning Adjustment of City of Kansas City***, 633 S.W.3d 446, 455 (Mo.App. 2021). We elect in our discretion, however, to review Buyers' arguments under point 2 *ex gratia*.

5

elect liquidated damages or specific performance upon Buyers' default, section 10 of the Agreement further provides that "an election by a party to pursue one or the other of the foregoing remedies shall not preclude that party from pursuing the other remedy *until full satisfaction shall have been received on the remedy pursued*." (Emphasis added.) Buyers argue that Seller received full satisfaction of the liquidated-damages remedy and, therefore, is precluded from seeking specific performance because Buyers paid Seller $100,000 in earnest money and Seller had "liquidated" that amount by depositing it into an interest-bearing account. Nothing in the Agreement, however, prohibits this action. Rather, the Agreement provides that "[i]n the event of a default under the Agreement by Buyer[s]," Seller may "*elect to terminate this Agreement by written notice to Buyer[s]*, in which event, the Earnest Money shall be paid to Seller as full liquidated damages . . . ." (Emphasis added.) Buyers altogether fail to identify any finding by the circuit court that Seller elected to terminate the Agreement in a manner consistent with this provision.

We turn to Buyers' remaining contentions, all of which pertain to the remedy of specific performance and its requirements. In point 2, Buyers assert that the Agreement "does not do away with the doctrine that specific performance is not a matter of right[.]" Buyers are correct that "specific performance is not a matter of right but is a remedy applied by courts of equity, depending upon the facts in the particular case; and the [circuit] court has judicial discretion within the established doctrines and principles of equity to award or withhold the remedy." *ROH Farms, LLC, v. Cook*, 572 S.W.3d 121, 125 (Mo.App. 2019) (internal quotation marks omitted). But this merely means that "[t]he discretionary nature of equitable relief permits its denial when a variety of factors combine to make enforcement of a promise unfair, even though no single legal doctrine alone would make the promise unenforceable." *Kopp v. Franks*, 792

6

S.W.2d 413, 420 (Mo.App. 1990) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 364(1) cmt. a (AM. L. INST. 1979)). As already stated, however, Buyers assert only that the circuit court *misapplied the law* in granting specific performance, not that it abused its discretion. This claim of error, which we review *de novo*, is simply incompatible with any argument premised on the circuit court's discretionary inquiry into the fairness of awarding an equitable remedy.

We next address Buyers' only remaining contention in point 2. Buyers assert that the Agreement "does not do away with the mandatory prerequisites for equitable relief that there be no adequate remedy at law[.]" Again, Buyers are correct: "where there is an adequate remedy at law, a court lacks authority to grant equitable relief." *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 16 (Mo. banc 2013). Buyers' reliance on this principle, however, seems to imply that the circuit court concluded otherwise—that Seller need not address or show no adequate remedy at law to seek specific performance under the Agreement. But, as Buyers acknowledge elsewhere in their brief, the circuit court made an explicit conclusion of law to the contrary, stating "that [Seller] *has no adequate remedy at law* and is entitled to specific performance." (Emphasis added.) Thus, any suggestion that the circuit court ignored such requirement is wholly refuted by the record.

What remains of Buyers' contentions regarding specific performance is in point 1. There, Buyers broadly assert that Seller *had* an adequate remedy at law, in that "[Seller] had a valid liquidated damages provision of the traditional 10% downpayment of earnest money, which satisfied [Seller's] actual damages." We disagree for several reasons.

First and foremost, "the general rule of the law of contracts is well settled that, in certain cases, a breach of contract may give rise to two remedies." *Magruder v. Pauley*, 411 S.W.3d 323, 331 (Mo.App. 2013) (internal quotation marks omitted). "One is an action at law for

damages for the breach; the other is a suit in equity for the specific performance of the contract."

*Id.* (internal quotation marks omitted). As relevant to the former remedy, "[l]iquidated damages are a measure of compensation which, at the time of contracting, the parties agree shall represent damages in a case of breach." ***Paragon Grp., Inc. v. Ampleman***, 878 S.W.2d 878, 880 (Mo.App. 1994). Yet, "there is no prohibition against a court of equity decreeing both specific performance and awarding damages." ***Metropolitan St. Louis Sewer Dist. v. Zykan***, 495 S.W.2d 643, 657 (Mo. 1973). "The remedy at law for damages and the remedy in equity for specific performance are not exclusive of each other, but are cumulative where the remedy at law is inadequate." ***Home Shopping Club, Inc. v. Roberts Broadcasting Co.***, 989 S.W.2d 174, 180 (Mo.App. 1998). In the same vein,

> a valid provision for liquidated damages merely relieves the non-breaching party of the necessity of proving his actual damages, if he chooses to sue for damages, or otherwise assert his right to damages; that is its function and it has no relation to the broad question of whether or not a monetary recovery is a measure sufficient to relieve fully the complainant from the distress he suffers by reason of defendant's wrong.

***State ex rel. Schoenbacher v. Kelly***, 408 S.W.2d 383, 392 (Mo.App. 1966).

Here, per the terms of the Agreement, Seller could respond to Buyers' default by terminating the Agreement by written notice and retaining the earnest money as liquidated damages *or* seek specific performance of the Agreement and recover damages for losses incurred. Seller pursued, and the circuit court awarded, the latter option. The circuit court's finding "that [Seller] has no adequate remedy at law and is entitled to specific performance" can be properly based on various facts. *See generally* ***Robert Blond Meat Co. v. Eisenberg***, 273 S.W.2d 297, 298 (Mo. 1954).[6] Such facts, however, are irrelevant to this appeal because Buyers

---

[6] In ***Robert Blond Meat Co.***, our high court set forth the following reasons a money judgment may be an inadequate remedy at law for a real estate seller:

do not claim that the circuit court's no-adequate-remedy-at-law finding was unsupported by substantial evidence or was against the weight of the evidence.[7] As noted several times in this opinion, Buyers assert *only* that the circuit court misapplied the law.

As best as we are able to discern, Buyers' misapplication-of-law argument appears to stem from a misunderstanding of Seller's specific-performance claim and the resulting judgment. According to Buyers, "[w]ith the [P]roperty's value found by the court to be $900,000, and still in possession of [Seller], that leaves only the $57,254.88 in damages that the [circuit] court found [Seller] had incurred, and the $27,586.85 in attorneys' fees from his decision to bring the case." Buyers then levy the following criticism:

> Besides payment of money, no other action was specifically ordered to be rendered by [Buyers]. The remaining actions would have to be rendered by . . . Seller. Thus, the pleadings and the evidence introduced by Seller indicated that he was seeking a monetary award and was in fact awarded only monetary damages. As stated by the [***Strong v. Crancer***] Court, "Why can he not collect these amounts by a suit at law?" 335 Mo. 1209, 1215, 76 S.W.2d 383, 385 (1934).

(Record citation omitted.)

---

> Before conveyance has been made by the [seller] his remedy in damages [is] not an adequate one. He cannot get judgment for the full price, because he still has the land. His damages are usually measured by the contract price less the value of the land retained; but the land is a commodity that has no established market value, and the [seller] may not be able to prove what his real harm will be. Even if he can make this proof, the land may not be immediately convertible into money, and he is deprived of the power to make new investments. Prior to getting a judgment, the existence of the contract, even though broken by the [buyer], operates as a clog on salability, so that it may not be possible to find a purchaser at any fair price.

273 S.W.2d at 298 (quoting RESTATEMENT (FIRST) OF CONTRACTS § 360 cmt. c (AM. L. INST. 1932)) (internal quotation marks omitted).

[7] The judgment does not disclose what evidentiary facts were found to support the circuit court's ultimate finding of fact that Seller has no adequate remedy at law. In such situations, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." ***Pentecost v. Webster***, 674 S.W.3d 195, 204 (Mo.App. 2023) (internal quotation marks omitted).

There are several problems with this argument. First, the circuit court did not "value" the Property at $900,000; it merely decreed that this is the amount owed to Seller by Buyers under the Agreement. Also, this amount is not "monetary damages"; it is Buyers' performance obligation. Furthermore, the fact that Seller was also awarded $57,254.88 and $27,586.85 in "monetary damages" does not preclude Seller from receiving the additional remedy of specific performance. *See Home Shopping Club, Inc.*, 989 S.W.2d at 180. And the fact that the Agreement contained a liquidated damages provision is irrelevant to the ultimate question of whether Buyers' failure to purchase the Property, with all of the attendant consequences that may have befallen Seller as a result, can be compensated through monetary recovery alone. *See Robert Blond Meat Co.*, 273 S.W.2d at 298; *State ex rel. Schoenbacher*, 408 S.W.2d at 392. Buyers simply fail to direct us to any legal authority suggesting otherwise or supporting their claims that the circuit court *misapplied the law* in awarding specific performance of the Agreement.[8] Accordingly, we deny points 1 and 2.

As a final matter, the parties filed motions requesting an award of appellate attorneys' fees pursuant to section 10 of the Agreement. "We may award attorney's fees on appeal if they are authorized by the written agreement that is the subject of the issues on appeal." *Rx Recalls, Inc. v. Devos, Ltd.*, 317 S.W.3d 95, 96-97 (Mo.App. 2010). Finding that Seller is entitled to

---

[8] Buyers rely heavily on *Seabaugh v. Keele*, 775 S.W.2d 205 (Mo.App. 1989), but that reliance is misplaced.

In *Seabaugh*, this Court affirmed the *denial* of a claim for specific performance for three reasons, all based on certain factual findings unique to that case: (1) "the evidence [showing that the value of the property had increased by $40,000 beyond the contract sale amount] amply support[ed] the [circuit] court's finding that the $5,000 liquidated damage provision was intended to and did compensate plaintiffs for any damages they might have sustained"; (2) "[a]s noted by the [circuit] court," one of the plaintiffs "declar[ed] that the deal was over when not closed by December 31, and that he would keep the $5,000 and the property" and "offer[ed] to sell the property to others," all of which was "inconsistent with the continued existence of the contract, [and] may be considered as an abandonment of the contract by plaintiffs, thereby precluding their entitlement to specific performance"; and (3) the circuit court did not abuse its discretion in finding that the "'equitable considerations do not mitigate in favor of specific performance'" in light of evidence that the plaintiffs had misrepresented the property for sale. *Id.* at 206-07. Because the circuit court's factual findings in the instant case are distinct from those in *Seabaugh*, and, moreover, because Buyers do not challenge said factual findings on appeal, *Seabaugh* provides them no support.

attorneys' fees on appeal under the terms of the Agreement, we grant Seller's motion and deny Buyers' competing motion. Although this Court has authority to grant appellate attorneys' fees, remand to the circuit court is appropriate because "the [circuit] court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 58 (Mo.App. 2016).

## Decision

The circuit court's judgment is affirmed. The cause is remanded to the circuit court to determine and award reasonable attorneys' fees incurred on appeal by Seller.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS